UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
DANIEL PAULINO

                    **Plaintiff,**                                      **AMENDED COMPLAINT**

                -against-                                      Index No. 05-CV-4647

**NEW YORK PRESSMEN'S UNION NUMBER TWO**
**and THE NEW YORK POST**

                                                                                 **Jury Trial Demanded**

                  **Defendants.**
-----------------------------------------------------------------X

       Plaintiff, **DANIEL PAULINO,** by and through his attorneys, FRANK & ASSOCIATES, PC, complains and alleges as follows:

### I.   PRELIMINARY STATEMENT

1. Plaintiff brings this action to recover monetary and affirmative relief based upon Defendants' violations of the Labor Management Relations Act (hereinafter "LMRA"), 29 U.S.C. § 301, *et seq.*, Consolidated Omnibus Budget Reconciliation Act (hereinafter "COBRA"), 29 U.S.C. §1161 *et seq.*, Title VII of the Civil Rights Act of 1964, as amended, (hereinafter "Title VII"), 42 U.S.C. § 2000e *et seq.*, the New York State Human Rights Law, Executive Law § 296 *et seq.* (hereinafter "NYSHRL,") the New York City Human Rights Law (hereinafter "NYCHRL"), N.Y. City Admin. Code §8-101 *et seq.*, 29 U.S.C. § 1133, §29 U.S.C. 1140, and other appropriate rules, regulations, statutes and ordinances.

## II.   JURISDICTION AND VENUE

2. This Court has jurisdiction over this action pursuant to and 28 U.S.C. § 1331, 1332.

3. This Court has jurisdiction over all state law claims brought in this action pursuant to 28 U.S.C. § 1367.

4. This Court has jurisdiction over this action pursuant to 42 U.S.C. § 2000e, *et seq.*,

5. This Court has jurisdiction over this action pursuant to 29 U.S.C. § 185(a).

6. This action properly lies in the United States District Court for the Southern District of New York, pursuant to 28 U.S.C.1391 because the unlawful discriminatory conduct occurred within the State of New York, New York County.

7. Plaintiff filed a timely charge of discrimination with the Equal Employment Opportunity Commission (hereinafter EEOC"). Plaintiff brings this action within ninety (90) days of the receipt of a Notice of Right to Sue, issued by the EEOC on February 15, 2005, a true and accurate copy of which is attached hereto as *Exhibit A*.

## III.   PARTIES

8. Plaintiff, **DANIEL PAULINO**, was at all times relevant herein, a citizen of the State of New York residing in New York County.

9. At all times relevant herein, Plaintiff has been an employee within the meaning of 29 U.S.C. 630(f), NYSHRL 292(5) and Section 190(2) of the New York Labor Law, N.Y. LAB. LAW § 190(2) (McKinney 1986 Supp. 2001).

10. At all times relevant herein, Plaintiff has been a person within the meaning of NYSHRL 292(1).

11. Upon information and belief, Defendant, **NEW YORK NEWSPAPER PRINTING PRESSMEN'S UNION NUMBER TWO** (hereinafter "Local 2) is an unincorporated association doing business at 275 Seventh Avenue, Suite 1500, New York, New York 10001.

12. Upon information and belief, Local 2 is engaged in the business of negotiating with employers on behalf of Defendant, **NEW YORK POST**, (hereinafter "The Post") employees.

13. Upon information and belief, The Post is a domestic corporation doing business at 1211 Avenue of the Americas, New York, New York 10036.

14. Upon information and belief, the Post is engaged in the business of news reporting and newspaper printing.

15. Upon information and belief, at all times relevant herein, The Post is an employer within the meaning of 29 U.S.C. 630(b) and NYSHRL 292(5).

## IV. STATEMENT OF FACTS

16. Plaintiff repeats and realleges each and every allegation contained herein.

17. Plaintiff is a Hispanic male.

18. On or about July 2000 Plaintiff was hired by The Post as an apprentice.

19. Throughout Plaintiff's employment with The Post, Plaintiff performed his job duties in a satisfactory manner.

20. On or about September 12, 2001, Plaintiff received a letter from The Post advising him he would be elevated to journeyman status after working for the company four (4) years, which in Plaintiff's case would be approximately July 2004. Once an employee becomes a member

of Local 2, elevation to journeyman status is determined through the Junior Priority Revision List.

21. Plaintiff became a member of Local 2 in or around September 2000.

22. On or about February 2004 Plaintiff received a Junior Priority Revision List dated April 10, 2003. The Junior Priority Revision List is a listing of employees and the priority in which they are to be elevated to the status of journeyman. After reviewing this list, Plaintiff first learned that seniority was based on the number of shifts an employee worked rather than the number of years of service with The Post.

23. The April 2003 Priority List listed Plaintiff as number one hundred ninety-three (193) out of two hundred and three (203) employees on the priority list. Upon review of the list, Plaintiff noticed Gary Leonessa (hereinafter "Leonessa") was listed as number one hundred three (103), which is higher on the priority list. Upon information and belief, Leonessa did not become a member of Local 2 until 2001, one year later than the Plaintiff.

24. Shortly thereafter receiving the April list, Plaintiff received an updated Junior Priority Revision List dated February 1, 2004. Plaintiff was listed as number eighty-six (86) on the priority list. Carol Margolin (a.k.a. Colman) (hereinafter "Margolin") appeared above Plaintiff on this list at number eighty (80), even though she was listed below Plaintiff on the April 10, 2003 list.

25. Upon information and belief, Margolin and Leonessa are both Caucasian.

26. After reviewing the February seniority list, Plaintiff advised Dan MacPhee (hereinafter "MacPhee"), a union official in charge of preparing the Revisions List. Plaintiff advised MacPhee there were several errors on both the April 2003 and February 2004 priority lists.

MacPhee reiterated that journeyman status was based on the number of shifts an employee worked for The Post. MacPhee then suggested Plaintiff bring in his payroll records for MacPhee to review in order to determine if Plaintiff worked the appropriate shifts required to become a journeyman.

27. Shortly thereafter, Plaintiff presented his payroll records to MacPhee. MacPhee reviewed Plaintiff's records and determined Plaintiff had worked enough shifts to be promoted to a journeyman. Nevertheless, MacPhee advised Plaintiff, "It doesn't matter how many shifts you've worked, I'm not going to put you in front of those people."

28. In or about February 2004, following his meeting with MacPhee, Plaintiff contacted William Loftus (hereinafter "Loftus") President of Local 2, to inquire what criteria was used to determine which employees would be elevated to journeyman status. Plaintiff also complained to Loftus that Local 2 was not abiding by the bylaws regarding journeyman status. Loftus failed to respond to Plaintiff's inquiry or complaint.

29. Based upon information and belief Plaintiff was discriminated against based on his race.

30. In or around September 2004, Plaintiff received a welfare authorization enrollment form for employees represented by Local 2. A signed enrollment form would authorize the deduction of pre-tax wages of "$50.00 each shift for which the Company contributes to the Fund for the period of September 16, 2004 to November 3, 2004, and $30.90 for each shift for which the Company contributes to the fund from November 4, 2004 and thereafter."

31. Plaintiff refused to sign the enrollment form because he did not feel comfortable authorizing the deductions.

32. On or around October 29, 2004, Plaintiff wrote a letter to Linda Babajko (hereinafter "Babajko") complaining about Local 2's manipulation of The Post's employees' journeyman status.

33. On or around November 1, 2004, Plaintiff was suspended by the Local 2 for refusing to sign the enrollment form.

34. On or around November 4, 2004, Plaintiff received a letter from Loftus directing him to appear before the Executive Board on December 6, 2004 to address the foregoing issues.

35. On or around December 6, 2004, Plaintiff appeared before the Executive Board. The Executive Board refused to address the issue of journeyman status based upon Plaintiff's refusal to sign the welfare authorization enrollment form and directed Plaintiff to "comply with his obligation."

36. On or about December 23, 2004, Local 2 distributed another welfare authorization enrollment form, which Plaintiff again refused to sign.

37. After receiving the final enrollment form, Plaintiff wrote a letter to Linda Babajko (hereinafter "Babajko"), Director of Human Resources for The Post. Plaintiff complained to Babajko about being forced to sign the welfare authorization enrollment form.

38. On or about January 14, 2005, Plaintiff received a response from Babajko. This response only addressed Plaintiff's concerns about seniority. The letter did not address the issue of the union's pressure to sign the welfare authorization enrollment form.

39. According to The Post's information, Plaintiff was listed among other employees who met the requirements to be elevated to journeyman status. Plaintiff was properly listed ahead of Margolin (a.k.a. Colman). Leonessa, who was given priority over Plaintiff on the Local 2's

Junior Priority Revisions List, was not listed in the Post's letter because Leonessa did not meet the requirements to become a journeyman before Plaintiff.

40. Throughout Plaintiff's employment with The Post, Plaintiff had medical insurance coverage through Empire Blue Cross.

41. In January 2005 Plaintiff applied for medical benefits for his wife, Rosa Paulino (hereinafter "Mrs. Paulino"). Mrs. Paulino became pregnant on or around October 2004.

42. Plaintiff sent the application to the Pressmen's Union Benefits office.

43. Plaintiff received two cards (one in his name and one in his wife's name) from Empire/Bluecross Blueshield. The letter accompanying the cards instructed Plaintiff to call Empire/Bluecross Blueshield to confirm activation of the cards. However, when Plaintiff called, Empire/Bluecross Blueshield informed Plaintiff his medical insurance had been cancelled as of January 1, 2005.

44. On February 10, 2005, Plaintiff received a letter from Empire/Bluecross Blueshield confirming cancellation effective January 1, 2005.

45. Upon information and belief, Plaintiff's medical insurance was cancelled due to his refusal to sign the welfare authorization form.

46. Upon information and belief, other employees who did not refuse to sign the welfare authorization form did not have their benefits terminated.

47. Plaintiff was never notified of termination of medical benefits.

48. Plaintiff was never notified of his rights to continue coverage under COBRA.

49. Although Plaintiff attempted to purchase his own coverage through Empire/Bluecross Blueshield, he was unable to obtain insurance coverage for Mrs. Paulino because her pregnancy was considered a "pre-existing condition."

## V. CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
(Race Discrimination – Title VII)

50. Plaintiff repeats and realleges each and every allegation contained herein.

51. Plaintiff has been discriminated against by defendant on the basis of his race in violation of the Title VII, in that Defendant engaged in a course of conduct, as stated above, which created unequal working conditions, and resulted in the unlawful termination of Plaintiff's employment.

52. As a proximate result of Defendants' discrimination, Plaintiff has suffered and continues to suffer substantial loss of past and future earnings, bonuses, and other employment benefits.

53. As a further proximate result of Defendants' actions, Plaintiff has suffered and continues to suffer severe and lasting embarrassment, humiliation, anguish, depression, and other incidental and consequential damages and expenses.

54. The conduct of Defendants was done in conscious disregard of Plaintiff's rights. Therefore, Plaintiff is entitled to equitable and injunctive relief, an award of punitive damages, compensatory damages, expenses and attorney's fees from defendant in an amount to be determined at trial.

## SECOND CLAIM FOR RELIEF
(NYSHRL - Race Discrimination)

55. Plaintiff repeats and realleges each and every allegation contained herein.

56. Plaintiff has been discriminated against by Defendants, on the basis of his race in violation of the NYSHRL, in that Defendants engaged in a course of conduct, as stated above, which created unequal working conditions, and resulted in the unlawful failure to elevate Plaintiff to journeyman.

57. As a proximate result of Defendants' discrimination, Plaintiff has suffered and continues to suffer substantial loss of past and future earnings, bonuses and other employment benefits.

58. As a further proximate result of Defendants' actions, Plaintiff has suffered and continues to suffer severe and lasting embarrassment, humiliation, anguish, depression, and other incidental and consequential damages and expenses.

59. Defendants' conduct was done in conscious disregard of Plaintiff's rights. Therefore, Plaintiff is entitled to equitable and injunctive relief and an award of compensatory damages in an amount to be determined at trial.

## THIRD CLAIM OF RELIEF
(New York City Administrative Code – Racial Discrimination)

60. Plaintiff repeats and realleges each and every allegation contained herein.

61. Plaintiff has been discriminated against by Defendants, on the basis of his race in violation of the NYSHRL, in that Defendants engaged in a course of conduct, as stated above, which created unequal working conditions, and resulted in the unlawful failure to elevate Plaintiff to journeyman.

62. As a proximate result of Defendants' discrimination, Plaintiff has suffered and continues to suffer substantial loss of past and future earnings, bonuses and other employment benefits.

63. As a further proximate result of Defendants' actions, Plaintiff has suffered and continues to suffer severe and lasting embarrassment, humiliation, anguish, depression, and other incidental and consequential damages and expenses.

64. Defendants' conduct was done in conscious disregard of Plaintiff's rights. Therefore, Plaintiff is entitled to equitable and injunctive relief and an award of compensatory damages in an amount to be determined at trial.

## FOURTH CLAIM FOR RELIEF
(COBRA – Failure to Notify Continuation of Coverage)

65. Plaintiff repeats and realleges each and every allegation contained herein.

66. By failing to notify Plaintiff that despite the unlawful termination of his medical benefits, he could continue to receive medical coverage, Defendant Local 2 has violated COBRA.

67. As a proximate result of Defendant's violation of COBRA, Plaintiff has incurred damages for medical expenses, incurred after his benefits were terminated. Therefore, Plaintiff is entitled to compensatory damages in an amount to be determined at trial. Plaintiff is also entitled to the statutory penalty in the amount of $100 per day from January 1, 2005 to date

## FIFTH CLAIM FOR RELIEF
(ERISA - Failure to Properly Notify Termination of Benefits)

68. Plaintiff repeats and realleges each and every allegation contained herein.

69. By failing to notify Plaintiff that his medical benefits were terminated, Defendant Local 2 has violated ERISA Section 502.

70. As a proximate result of Defendant's violation of ERISA, Plaintiff has incurred damages for medical expenses, incurred after his benefits were terminated. Therefore, Plaintiff is entitled to compensatory damages in an amount to be determined at trial.

## SIXTH CLAIM FOR RELIEF
(ERISA – Interference with Protected Rights)

71. Plaintiff repeats and realleges each and every allegation contained here.

72. By terminating Plaintiff's medical benefits for refusal to "voluntarily" sign the enrollment form, Defendant Local 2 has violated ERISA Section 510.

73. As a proximate result of Defendant's violation of ERISA, Plaintiff has incurred damages for medical expenses, incurred after his benefits were terminated. Therefore, Plaintiff is entitled to compensatory damages in an amount to be determined at trial

## SEVENTH CLAIM FOR RELIEF
(LMRA – Breach of Duty of Representation)

74. Plaintiff repeats and realleges each and every allegation contained herein.

75. Defendant Local 2 acted in an arbitrary, capricious, and discriminatory manner and in bad faith in breach of its duty of fair representation owed to Plaintiff by refusing to appropriately place Plaintiff on the Junior Revisions List.

76. As a proximate result of Defendant's violation of LMRA Plaintiff has suffered and continues to suffer substantial loss of past and future earnings, bonuses and other employment benefits.

77. Defendants' conduct was done in conscious disregard of Plaintiff's rights. Therefore, Plaintiff is entitled to equitable and injunctive relief and an award of compensatory damages in an amount to be determined at trial.

## DEMAND FOR JURY TRIAL

78. Plaintiff repeats and realleges each and every allegation contained herein.

79. Plaintiff hereby demands a trial by jury.

**WHEREFORE**, as a result of the unlawful conduct and actions of the Defendants herein alleged, Plaintiff demands judgment:

a.. Declaring Defendants violated the aforementioned statutes;

b. On the First Claim for Relief, an award of Plaintiff's actual damages for past and future earnings, bonuses, other employment benefits, in an amount to be determined at trial plus interest;

c. On the Second Claim for Relief, an award of Plaintiff's actual damages for past and future earnings, bonuses, other employment benefits, in an amount to be determined at trial plus interest;

d. On the Third Claim for Relief, an award of Plaintiff's actual damages for past and future earnings, bonuses, other employment benefits, in an amount to be determined at trial plus interest;

e. On the Fourth Claim for Relief, an award of Plaintiff's actual damages incurred for medical expenses incurred after his benefits were terminated, as well as the statutory penalty of $100 per day from January 1, 2005 to date.

f. On the Fifth Claim for Relief, an award of Plaintiff's actual damages incurred for medical expenses incurred after his benefits were terminated, as well as full reinstatement of benefits.

g. On the Sixth Claim for Relief, an award of Plaintiff's actual damages incurred for

medical expenses incurred after his benefits were terminated, as well as full reinstatement of benefits.

h. On the Seventh Claim for Relief, an award of actual damages for past and future earnings, bonuses, other employment benefits, in an amount to be determined at trial plus interest.

Dated: Farmingdale, New York
July 6, 2005

        FRANK & ASSOCIATES, PC
        Attorneys for Plaintiff

      By: _____
        Neil M. Frank (NF 0521)
        500 Bi-County Blvd., Suite 112N
        Farmingdale, New York 11735
        (631) 756-0400