Barry I. Levy (BL 2190)
Matthew Litt
Shapiro, Beilly, Rosenberg, Aronowitz, Levy & Fox, LLP
225 Broadway – 13th Floor
New York, New York 10007
(212) 267-9020

*Counsel for Defendant, New York Newspaper*
*Printing Pressman's Union Local No. 2*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X
DANIEL PAULINO,

Plaintiff,

Docket No.:

-against-

05-cv-4647 (GBD)

THE NEW YORK PRESSMEN'S UNION NO 2 and
THE NEW YORK POST,

Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

**MEMORANDUM OF LAW ON BEHALF OF NEW YORK NEWSPAPER
PRINTING PRESSMEN'S UNION LOCAL NO. 2 IN SUPPORT
OF ITS MOTION TO DISMISS AND FOR SUMMARY JUDGMENT**

Dated:      August 1, 2005

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ................................................................................................. 1

STATEMENT OF RELEVANT FACTS .................................................................................... 3

THE STANDARDS ON THIS MOTION ................................................................................ 3

    A.    The Standard On A Motion To Dismiss ................................................................. 3

    B.    The Standard On A Motion For Summary Judgment ....................................... 5

ARGUMENT .............................................................................................................................. 6

I.      PLAINTIFF'S FEDERAL AND STATE DISCRIMINATION CLAIMS MUST BE DISMISSED AS A MATTER OF LAW ARGUMENT ............................... 6

II.     PLAINTIFF'S CLAIMS AGAINST LOCAL 2 FOR ALLEGED VIOLATIONS OF THE NEW YORK STATE HUMAN RIGHTS LAW AND/OR NEW YORK CITY ADMINISTRATIVE CODE SHOULD BE DISMISSED .......................................................................................................... 8

    A.    The Martin Standard ........................................................................................... 9

    B.    The Plaintiff's Amended Complaint Fails to Meet the Martin Standard ........................................................................................................... 11

III.    PLAINTIFF'S CLAIM AGAINST LOCAL 2 FOR AN ALLEGED VIOLATION OF THE COBRA STATUTE SHOULD BE DISMISSED AS A MATTER OF LAW ...................................................................................... 12

    A.    Plaintiff Has Failed to Plead A Qualifying Event That Would Have Triggered a Notification Requirement for Continuation Coverage ............................................................................................................ 13

    B.    The Union Is Not Required To Provide Notification of Continuation Coverage ............................................................................................................ 15

IV.    PLAINTIFFS' ERISA CLAIMS SHOULD BE DISMISSED AS A MATTER OF LAW .................................................................................................................. 16

    A.    Plaintiff's ERISA Section 502 Claim Should Be Dismissed ........................... 17

         1.   The Union Is Not A Proper Defendant Under Section 502 .................... 17

         2.   Plaintiff Cannot Assert a Section 502 Claim Because He Did Not Qualify For Coverage Under the Plan ....................................................... 18

         3.   Plaintiff Did Not Exhaust His Administrative Remedies Under the Plan ................................................................................................................. 19

    B.    Plaintiff's ERISA Section 510 Claim Should Be Dismissed ........................... 20

V.     PLAINTIFF' DUTY OF FAIR REPRESENTATION CLAIM IS TIME BARRED... 22

VI.    LOCAL 2 SHOULD BE REIMBURSED FOR THE COUNSEL FEES EXPENDED IN DEFENDING THIS ACTION AND FILING THIS MOTION .... 24

CONCLUSION ..................................................................................................................... 25

## PRELIMINARY STATEMENT

This memorandum of law is respectfully submitted on behalf of the Defendant, New York Printing Pressmen's Union, Local No. 2 (hereinafter referred to as the "Union" or "Local 2") in support of its present motion which seeks an order, (a) dismissing the Second Cause of Action (alleging a violation of NYSHRL §296), the Third Cause of Action (alleging a violation of NYCHRL), the Fourth Cause of Action (alleging a violation of COBRA) and the Seventh Cause of Action (alleging a breach of the duty of fair representation), pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, and (b) granting the Defendant judgment as a matter of law and dismissing the First Cause of Action (alleging a violation of Title VII), the Fifth Cause of Action (alleging a violation of Section 502 of ERISA) and the Sixth Cause of Action (alleging a violation of Section 510 of ERISA), pursuant to Rule 12(b)(6) and Rule 56 of the Federal Rules of Civil Procedure.

The Plaintiff's claims in this action should be dismissed because they (a) are replete with legal defects that cannot be remedied by repleading and/or (b) are flatly contradicted by the undisputed factual record in this matter. While the salient legal and factual defects are discussed in more detail below, Defendant would highlight the following:

(1)    Plaintiff's NYSHRL and NYCHRL must be dismissed as a matter of law because the Amended Complaint fails to plead that the alleged conduct of Local 2 was approved and/or ratified by each and every one of its members, as required by the Martin doctrine which has existed in New York for more than 50 years,

(2)    Plaintiff's COBRA claim is facially defective because the Amended Complaint does not plead a qualifying event that would have triggered a requirement for notice of continuation coverage, and in fact, both the Amended Complaint and the accompanying declarations demonstrate that the Plaintiff's coverage was lost only because <u>he</u> failed to make the employee contributions required for coverage eligibility. In addition, Local 2 is not a property party to the COBRA claim.

(3)    Plaintiff's ERISA Section 502 and Section 510 claims are facially defective, either because they fail to plead a claim, because Local 2 is not a proper party to such a claim under the relevant provisions of the statute, or because the Plaintiff failed to exhaust his administrative remedies before filing this suit.

(4)    Plaintiff's duty of fair representation claim is time barred.[1]

The legal and factual defects identified on this motion demonstrate that this action is frivolous and has been brought in bad faith because no reasonable investigation of the facts nor the law were actually undertaken by the Plaintiff's counsel before its commencement.  As such, not only does Local 2 request a dismissal of the action in its entirety, but also requests that this Court issue an order imposing sanctions upon the Plaintiff and his counsel, pursuant to 28 U.S.C. §1927 and the inherent power doctrine, and require them to reimburse Local 2 for the member's dues that were expended for legal fees in having to defend this action and file this motion.

2

## STATEMENT OF RELEVANT FACTS

The Court is respectfully referred to the accompanying statement of undisputed facts pursuant to Local Civil Rule 56.1 as well as the declarations of John Heffernan (President of Local 2) Robert Costello (Administrator for the Publisher's-Pressmen's Welfare Fund) and Joseph B. Vincent (Vice President – Operations for NYP Holdings, Inc.) which establish the basis for the Defendant's motion for summary judgment pursuant to Rule 56.

## THE STANDARDS ON THIS MOTION

Because this motion seeks dismissal of certain claims pursuant to Rule 12(b)(6) and summary judgment with regard to other claims pursuant to Rule 56, the standards are separately set forth below.

### A.    The Standard On A Motion To Dismiss

Under Rule 12(b)(6), a complaint should be dismissed where "it appears beyond doubt that the plaintiff[s] can prove no set of facts in support of [their] claim[s] which would entitle [them] to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957). While "the pleading standard is a liberal one, bald assertions and conclusions of law will not suffice." Law Offices of Curtis V. Trinko, LLP v. Bell Atlantic Corp., 309 F.3d 71, 74 (2d Cir. 2002); quoting Leeds v. Meltz, 85 F.3d 51, 53 (2d Cir. 1996). The district court must

---

[1]    The National Labor Relations Board has previously advised Plaintiff that his claims were time barred. (A copy of the NLRB's decision is attached hereto as Exhibit "A")

confine its consideration "to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." Allen v. Westpoint- Pepperell, Inc., 945 F.2d 40, 44 (2d Cir.1991); see also Gant v. Wallingford Board of Education, 69 F.3d 669, 673 (2d Cir. 1995)  However, the Court is not required to uphold the validity of a claim supported only by conclusory allegations, which may be properly disregarded where they are belied by more specific allegations. See Commer v. Keller, No. 98 Civ. 7808, S.D.N.Y., August 27, 1999) (Stein, J.); citing Hirsch v. Arthur Anderson & Co., 72 F.3d 1085, 1092 (2d Cir. 1995).

Review must be limited to the complaint and documents that are attached or incorporated by reference thereto. Kramer v. Time Warner, Inc., 937 F.2d 767, 773 (2d Cir. 1991); see also David v. GMDC, No. 01 Civ. 6931, 2002 WL 31748592 at * 3 (S.D.N.Y., December 6, 2002)(Sweet, J.).  In this context, the Second Circuit has held that a complaint is deemed to "include ... documents that the plaintiffs either possessed or knew about and upon which they relied in bringing the suit." Rothman v. Gregor, 220 F.3d 81, 88 (2d Cir. 2000); see also Tepper v. Bendell, No. 01 Civ. 6226, 2002 WL 31729601 at * 3 (S.D.N.Y., December 5, 2002)(Kram, J.)("The Court may also look to the facts stated in any documents attached to the complaint as exhibits, any documents incorporated by reference, and any documents that the plaintiff either possessed or knew about and upon which he relied in bringing the suit.")

B.    The Standard On A Motion For Summary Judgment

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment is proper where it is demonstrated "that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law". Horn Hardart Co. v. Pillsbury Co., 888 F.2d 8, 10 (2d Cir. 1989); Murray v. National Broadcasting Co., 844 F.2d 988, 992 (2d Cir.) cert. denied 488 U.S. 955, 109 S.Ct. 391 (1988).  Whether a fact is material depends on the substantive law underlying a particular claim and "only disputes over facts which might effect the outcome of the suit under the governing law will properly preclude the entry of summary judgment". Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 106 S.Ct. 2505, 2511 (1986).

The function of the District Court Judge is "not himself to weigh the evidence and determine the truth of the matter but to determine whether there does indeed exist a genuine issue for trial".  Anderson, supra, 477 U.S. at 249, 106 S.Ct. at 2510; see also, R.C. Bigelow, Inc. v. Unilever, N.V., 867 F.2d 102, 107 (2d Cir.), cert. denied 493 U.S. 815, 110 S.Ct. 64 (1989).  Although the burden is on the moving party to demonstrate the basis for its motion, that there is no genuine issue of fact, this burden may be discharged by "showing - that there is an absence of evidence to support the non-moving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554 (1986); see also Trebor Sportswear Co., v. Limited Stores, Inc., 865 F.2d 506, 511 (2d Cir. 1989).

**ARGUMENT**

**I.    PLAINTIFF'S FEDERAL AND STATE DISCRIMINATION CLAIMS MUST BE DISMISSED AS A MATTER OF LAW**

Title VII states that "[i]t shall be an unlawful employment practice for an employer * * * to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin * * *." See 42 U.S.C. § 2000e-2(a)(1) (2003). To make out a prima facie case of discrimination under Title VII, a Plaintiff must establish that he/she (1) is a member of a protected class, (2) was performing her job satisfactorily, (3) was subjected to an adverse employment action, and (4) either the adverse employment action occurred under circumstances giving rise to an inference of discrimination or similarly situated individuals were treated differently. See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 93 S.Ct. 1817 (1973); see also Graham v. Long Island Rail Road, 230 F.3d 34, 38 (2d Cir.2000).    Notwithstanding any other defect in the Plaintiff's discrimination claims, the claims must be dismissed as a matter of law because the Amended Complaint does not specifically plead an adverse employment action arising from the alleged misplacement on the Revision List nor does the evidence support the conclusion that there was any.

The Second Circuit has held that, to constitute an adverse employment action within the context of a Title VII claim, a plaintiff must demonstrate that an employment action was one that resulted in a "materially adverse change in the terms and conditions of [an individual's] employment which must be more disruptive than a mere

inconvenience or an alteration of job responsibilities." Galabya v. New York City Bd. of Educ., 202 F.3d 636, 640 (2d Cir.2000); see also Richardson v. N.Y. State Dep't of Corr. Serv., 180 F.3d 426, 446 (2d Cir.1999) (quotation omitted)[2]. To be materially adverse, a change in working conditions must be more than merely inconvenient. Actionable examples of "adverse employment action" include termination of employment, demotion indicated by diminution in wage, less distinguished title, material loss of benefits and significantly diminished material responsibilities. See Galabya, supra, 202 F.2d at 640; see also Morrison v. Potter, 363 F.Supp.2d 586, 590 (S.D.N.Y. 2005).

Here, no specific nor tangible allegations of adverse employment consequences are actually set forth in the Plaintiff's Amended Complaint.[3]  In fact, it is clear that Plaintiff's counsel made no reasonable effort to investigate the facts of this case before initiating the action and that the conduct is sanctionable because the Amended Complaint pleads that the Title VII claim is based upon the fact that the Plaintiff's employment was actually terminated, and that he suffered a loss of past and future earnings, bonuses and benefits. See Amended Complaint at ¶¶ 51-52.  Those assertions

---

[2]    The NYSHRL and NYCHRL claims should be substantively analyzed for the same deficiency within the legal framework established for the federal claims. Smith v. Xerox Corp., 196 F.3d 358, 363 n. 1 (2d Cir.1999); see also Bickerstaff v. Vassar College, 354 F.Supp.2d 276, 280 (S.D.N.Y. 2004).

[3]    Plaintiff also makes the bare allegation that he suffered subjective forms of damage (i.e. anguish, embarrassment humiliation).  See Amended Complaint at ¶ 53. Those allegations do not represent adverse employment consequences that are actionable under Title VII.  See Reyes v. New York State Office of Children and Family Services, 2003 WL 21709407, at *9 (S.D.N.Y. July 22, 2003); see also Henriquez v. Times Herald Record, 1997 WL 732444, at *6 (S.D.N.Y. November 25, 1997), aff'd 165 F.3d 14 (2d Cir.1998).

are patently false, as Mr. Paulino has been employed on an uninterrupted basis by the New York Post since he became a regular situation holder in 2000, and remains employed as of today. See Vincent Declaration at ¶ 5.

As demonstrated in the accompanying affidavits of Joseph B. Vincent and John Heffernan, the reason that the Amended Complaint is devoid of any facts to support the existence of an adverse employment consequence is because there have been none as a result of his position on the Revision list. See Heffernan Dec. at ¶ 15 (Paulino suffered no loss of wages, benefits or other terms and conditions of employment either inside or outside of the New York Post); see Vincent Dec. at ¶ 5 (Paulino suffered no loss of wages, benefits or other terms and conditions of employment at the New York Post). In short, the Plaintiff's discrimination claims are frivolous as plead, and lack any factual basis. As such, the claims brought pursuant to Title VII, NYSHRL and NYCHRL should be dismissed as a matter of law.

## II.    PLAINTIFF'S CLAIMS AGAINST LOCAL 2 FOR ALLEGED VIOLATIONS OF THE NEW YORK STATE HUMAN RIGHTS LAW AND/OR NEW YORK CITY ADMINISTRATIVE CODE SHOULD BE DISMISSED

Plaintiff's Amended Complaint purports to advance racial discrimination claims against Local 2 under New York State Law and the New York City Administrative Code. More specifically, the Second Cause of Action purports to state a claim for racial discrimination in violation of the NYSHRL, while the Third Cause of Action purports to state a claim for racial discrimination under the New York City Adminsitrative Code. See Amended Complaint at ¶ 55 through ¶ 64. In addition to th reasons set forth in

Point I, both claims must be dismissed as a matter of law for the simple reason that the Amended Complaint is devoid of a single allegation demonstrating that the conduct of the labor organization (i.e. Local 2) was approved and/or ratified by each and every one of its members, as required under the <u>Martin</u> doctrine which is applicable to claims of this nature.

A.    <u>The Martin Standard</u>

It is well settled in New York that the liability of an unincorporated association under state law, such as a labor union, must be attributable against each member individually, and therefore, must be provable against each member.  <u>See</u> <u>Martin v. Curran</u>, 303 N.Y. 276, 278, 101 N.E.2d 683 (1951)("We agree that those cases, and many others, which apply Section 13 of the New York General Associations Law … make impossible the maintenance of this action against these defendants as officers of the union, since there is in this complaint no allegation that the individual members of the union authorized or ratified the tort complained of"); <u>see also</u> <u>Walsh v. Torres-Lynch,</u> -- A.D.2d --, 697 N.Y.S.2d 434 (4th Dept. 1999) ("the failure to allege that the individual members of the Union authorized or ratified the complained of conduct renders the amended complaint fatally defective as against the Union"); <u>Mounteer v. Bayly</u>, 86 A.D.2d 942, 448 N.Y.S.2d 582, 583 (3rd Dept. 1982)("Further, it has long been the settled law of the State that an action against a voluntary unincorporated association, as here,

may be maintained only if the cause of action is provable against each and every member of the association.")[4]

Both the Court of Appeals for the Second Circuit and the federal district courts in New York have repeatedly acknowledged the application of the <u>Martin</u> doctrine in cases brought against labor organizations and their officers, where state common law tort claims are asserted. <u>See e.g.</u> <u>Modeste v. Local 1199, Drug, Hospital and Health Care Employees Union</u>, 38 F.3d 626, 627 (2d Cir. 1994); <u>see also</u> <u>Building Industry Fund v. Local Union No. 3, Int'l Bhd. Of Elec. Workers, AFL-CIO</u>, 992 F.Supp. 192, 193-194 (E.D.N.Y 1996)(recognizing the Martin rule's continuing vitality in New York); <u>Purnell v. Diesso</u>, No. 94 Civ. 4361 (RPP), 1996 WL 37770 at *3 n.2 (S.D.N.Y. Jan 31, 1996) (dismissing plaintiff's claim against local union and international union for infliction of emotional dismiss under Martin rule).

Under the <u>Martin</u> standard, in order to properly plead a state law claim against a labor union there must be specific allegations in the complaint of "ratification [of] … the specific acts in question" by each and every member of the labor organization. Furthermore, the plaintiff must set forth specific evidentiary facts in the complaint demonstrating the membership's unanimous approval and/or ratification of the conduct. See <u>A. Terzi Productions, Inc. v. Theatrical Protective Union</u>, 2 F.Supp.2d 485,

---

[4]    See also <u>Giffords Oil Co., Inc. v. Boss</u>, 54 A.D.2d 555, 387 N.Y.S.2d 51 (2d Dept. 1976) (Complaint by oil company for property damage allegedly inflicted on its tank truck and for punitive damages dismissed against officers of local union where there was no showing by competent evidentiary material that the union, though its membership, had authorized, participated in or ratified the tortious conduct enumerated in the complaint.)

492 (S.D.N.Y. 1998)(reaffirming Martin rule and dismissing complaint where there was no more than a conclusory allegation of approval or ratification in the complaint);[5] see also R.M. Perlman, Inc. v. Local 89-22-1, ILGWU, 789 F.Supp. 127, 131-32 (S.D.N.Y. 1992).

### B.     The Plaintiff's Amended Complaint Fails to Meet the Martin Standard

The Plaintiff's Amended complaint in this case wholly fails to meet the standards required to assert claims against Local 2.  Notwithstanding the perfunctory and self-serving allegations of liability, there is a total absence of an allegation or even a single factual predicate suggesting that Local 2's alleged conduct was authorized or ratified by each of the more than the 600 members of the labor organization.  As such, Plaintiff's claims for racial discrimination under NYSHRL and the New York City Administrative Code must be dismissed.  In Girolamo v. Teamster Local 72, IBT, No. 97 Civ. 9412 (SAS), 1998 WL 889039 (S.D.N.Y, December 21, 1998) Judge Scheindlin was faced with the very issue of whether the labor organization could be held responsible for a violation of State Law in the absence of ratification by the local union's membership.   The Court

---

[5]     In A. Terzi Productions, Judge Sotomayor recognized that a plaintiff was required to plead evidentiary facts demonstrating that there was full knowledge by the union's membership of the acts of the labor organization, and express approval after having that very knowledge. Id. 2 F.Supp.2d. at 492.

concluded that the absence of allegations demonstrating ratification by the membership warranted dismissal of the claim:

> Plaintiff has not alleged that all members of Local 72 authorized or participated in the allegedly discriminatory conduct. There, for the plaintiff's claim under §296 of the New York Human Rights Law against Local 72 is dismissed. Id. 1998 WL 889039 at *9.

See also Harold Hoffman, et. al. v. District Council 37, et. al., 99 Civ. 8636 (KMW) (February 23, 2001)(Slip Op.) at page 6 ("For these reasons, the Court concludes that the Martin doctrine bars claims against union and their officials brought pursuant to §296 in the absence of allegations that the §296 violations were authorized or ratified by the entire union membership.");[6] Prin v. De Luca, 218 N.Y.S.2d 761, 762 (Sup. Ct. N.Y. Co. 1961)(applying Martin doctrine to bar state law claims against union claiming discrimination in allocation of layoffs based upon sex and in violation of seniority rights).

## III.    PLAINTIFF'S CLAIM AGAINST LOCAL 2 FOR AN ALLEGED VIOLATION OF THE COBRA STATUTE SHOULD BE DISMISSED AS A MATTER OF LAW

Plaintiff's Amended Complaint also purports to advance a claim against Local 2 for violating the Consolidated Omnibus Budget Reconciliation Act of 1986 hereinafter "COBRA") based upon its failure to notify the Plaintiff of his alleged right to continuation of coverage. See Amended Complaint at ¶¶ 65-67.   Plaintiff's claim is facially defective as a matter of law for several independent reasons, including but not

limited to the following: (a) Plaintiff has failed to plead the existence of a "qualifying event" that would have triggered the obligation to provide notice of continuation of benefits under the statute, (b) the Administrator and not the Union (i.e. Local 2) is the party legally obligated to provide Plaintiff with the notice of election, and (c) Plaintiff was provided with a notice of election by the Fund Administrator even though the Plaintiff was not legally entitled to continuation benefits.

      A.      Plaintiff Has Failed to Plead A Qualifying Event That Would Have Triggered a Notification Requirement for Continuation Coverage

Under the COBRA statute, a plan sponsor of a group health plan is required to provide individuals with the right to elect continuation coverage under the plan where their loss of coverage is as a result of a "qualifying event". See 29 U.S.C. §1161(a)("The plan sponsor of each group health plan shall provide, in accordance with this part, that each qualified beneficiary who would lose coverage under the plan as a result of a qualifying event is entitled, under the plan, to elect, within the election period, continuation coverage under the plan.")  Under the statute, qualifying events are limited to specific events that result in the loss of coverage of a qualified beneficiary:

(1)      The death of the covered employee.

(2)      The termination (other than by reason of such employee's gross misconduct), or reduction of hours, of the covered employee's employment.

(3)      The divorce or legal separation of the covered employee from the employee's spouse.

---

[6]    A copy of Judge Wood's slip opinion in Hoffman is attached hereto as Exhibit "B".

(4)      The covered employee becoming entitled to benefits under title XVIII of the Social Security Act [42 U.S.C.A. § 1395 et seq.].

(5)      A dependent child ceasing to be a dependent child under the generally applicable requirements of the plan.

(6)      A proceeding in a case under Title 11, commencing on or after July 1, 1986, with respect to the employer from whose employment the covered employee retired at any time.

See 29 U.S.C. §1163.

In this case, the Plaintiff has not alleged that there was a qualifying event that triggered the requirement to provide notification pursuant to 29 U.S.C. §1161(a). In fact, the only event that Plaintiff identifies within the Amended Complaint is the fact that he failed to make direct payment for the employee contribution, or authorize a salary reduction through a Section 125 plan to pay the contribution, which was required to remain eligible for coverage under the terms of the Plan. See Amended Complaint at ¶¶ 30 and 36 (indicating refusal to sign welfare authorization form to authorize employee contributions in September and December of 2004); see also Costello Dec. at ¶ 9 (stating that Paulino failed to sign the authorization for contributions and failed to make any employee contributions required for benefit eligibility) . The Plaintiff's failure to pay or to make arrangements for the payment of the employee contributions to the Fund necessary to maintain his eligibility for health and medical benefits under the terms of the Plan, however, is not a qualifying event under 29 U.S.C. §1163. As such, Plaintiff's claim must be dismissed on this basis alone

B.    The Union Is Not Required To Provide Notification of Continuation
Coverage

Even if a qualifying event had taken place, Plaintiff's claim against Local 2 is also legally defective because the Union has no legal obligation to provide the Plaintiff with notice of continuation coverage.[7]  Plaintiff ignorantly interprets the COBRA statute when he alleges that Local 2 violated 29 U.S.C. §1161(a) by failing to provide him with notification of his rights to elect continuation coverage. See Amended Complaint at ¶ 66. Even if this Court were to assume that there was a legal obligation to provide Plaintiff with notification of continuation coverage despite the absence of a qualifying event, the obligation is that of the Administrator, not the Union.  Specifically, 29 U.S.C. §1166(a)(4) states as follows:

the administrator shall notify—

(A)    in the case of a qualifying event described in paragraph (1), (2), (4), or (6) of section 1163 of this title, any qualified beneficiary with respect to such event, and

(B)    in the case of a qualifying event described in paragraph (3) or (5) of section 1163 of this title where the covered employee notifies the administrator under paragraph (3), any qualified beneficiary with respect to such event, of such beneficiary's rights under this subsection

The term "administrator" is defined within the statute, as  "the person specifically so designated by the terms of the instrument under which the plan is operated." See 29 U.S.C. §1002(16).  Under the terms of the Plan under which Plaintiff

---

[7]    Once again, the absence of any factual investigation into this matter by Plaintiff's counsel is demonstrated by the fact that Paulino was provided with an election notice despite the fact that the Fund had no obligation o do so. See Costello Dec. at ¶ 10 ("Even though a notice of continuation coverage was not required, the Welfare Fund sent Mr.

claims coverage, the Board of Trustees are the designated plan administrator as defined in Section 3(16) of ERISA. <u>See</u> Costello Dec. at ¶ 2 and Exhibit "A" (the SPD) at page 104 (identifying the Board of Trustees as the Administrator under Section 3(16) of ERISA). Accordingly, the legal obligation that Plaintiff claims was breached is not an obligation that belongs to Local 2.  Accordingly, the Fourth Cause of Action must be dismissed for this reason, as well.


## IV.    PLAINTIFFS' ERISA CLAIMS SHOULD BE DISMISSED AS A MATTER OF LAW

Plaintiff's Amended Complaint also purports to assert claims against Local 2 under Section 502 of ERISA, 29 U.S.C. §1132, and Section 510 of ERISA, 29 U.S.C. §1140. As discussed below, those claims should be dismissed pursuant to Rule 12(b)(6) and Rule 56 because (a) The Union is not a proper defendant in a claim seeking benefits under 29 U.S.C. §1132, (b) Plaintiff cannot maintain a claim under 29 U.S.C. §1132 because he does not qualify for coverage under the Plan, (c) the Plaintiff has no claim under 29 U.S.C. §1132 because he failed to exhaust the internal administrative procedures required under the Plan, which represent a condition precedent to the initiation of litigation for benefits, and (d) the complaint fails to state a cause of action for a violation of 29 U.S.C. §1140.

---

Paulino an election notice, by mail, on February 7, 2005") and Exhibit "F" (COBRA Notice)

A.    Plaintiff's Section 502 Claim Should Be Dismissed

In his Fifth Cause of the Action, the Plaintiff purports to allege a claim against Local 2 under Section 502 of ERISA, and seeks "actual damages for medical expenses incurred after his benefits were terminated, as well as full reinstatement of his benefits." See Amended Complaint at ¶¶ 68-69 and page 12 – paragraph (f).  Plaintiff's Section 502 claim should be dismissed as against the Union as a matter of law because (a) the Union is not a proper party to the claim, (b) the Plaintiff has not plead that he has an entitlement to the benefits and the record clearly demonstrates his ineligibility, and (c) the Plaintiff has failed to exhaust the remedies under the Plan.

1.    The Union Is Not A Proper Defendant Under Section 502

In the Second Circuit, the law is well established that in a claim for benefits under the terms of an employee benefit plan pursuant to 29 U.S.C. §1132, the liability only extends to the plan and the administrators and trustees of the plan in their capacity as such. Leonelli v. Pennwalt Corp., 887 F.2d 1195, 1199 (2d Cir.1989)("In a recovery of benefits claim, only the plan and the administrators and trustees of the plan in their capacity as such may be held liable"); Chapman v. ChoiceCare Long Island Term Disability Plan, 288 F.3d 506, 509 (2d Cir. 2002)(same); see also Chapro v. SSR Realty Advisors, Inc. Severance Plan, 351 F.Supp.2d 152, 155 (S.D.N.Y. 2004)(same)[8] Because

---

[8]    This conclusion is consistent with the language in 29 U.S.C. § 1132(d)(1) which states that "[a]n employee benefit plan may sue or be sued under this subchapter as an entity" and in subsection (d)(2) that "[a]ny money judgment ... against an employee benefit plan shall be enforceable only against the plan as an entity." See Chapman v. ChoiceCare Long Island Term Disability Plan, 288 F.3d 506, 509 (2d Cir. 2002)

17

the Union is neither the plan, the administrator of the plan nor a trustee of the plan, it is not a proper party to the Section 502 claim. See e.g. Crocco v. Xerox Corp., 137 F.3d 105, 107-08 (2d Cir. 1998) (dismissing §1132 claim against employer for benefits because it was neither the designated plan administrator nor a plan trustee); c.f. Tocker v. Philip Morris Companies Inc., 346 F.Supp.2d 460, 467 (S.D.N.Y. 2004)(finding that complaint which named parties that either directly or indirectly employed plaintiff were not proper defendants in a Section 502 claim).

2.    Plaintiff Cannot Assert a Section 502 Claim Because He Did Not Qualify For Coverage Under the Plan

A claim under Section 502 has been recognized in this Circuit as the assertion of a contractual right under a benefit plan. See Devlin v. Empire Blue Cross and Blue Shield, 274 F.3d 76, 82 (2d Cir. 2001).  Thus, in order to enforce the terms of the plan under Section 502, the "participant must first qualify for the benefits provided in that plan." Strom v. Goldman, Sachs & Co., 202 F.3d 138, 142 (2d Cir.1999); quoting Tolle v. Carroll Touch, Inc., 977 F.2d 1129, 1133 (7th Cir.1992); see also Yoon v. Fordham Univ. Faculty and Administrative Retirement Plan, 263 F.3d 196, 207 (2d Cir. 2001)(Kaplan, concurring opinion).  In this case, the Plaintiff's complaint fails to allege that he was qualified (i.e. eligible) for the benefits under the terms of the Plan that were provided by the Welfare Fund, and in fact, acknowledges in multiple paragraphs within the pleading that he refused to authorize a payroll deduction so that participant contributions required for eligibility for benefits were paid. See Amended Complaint at

18

¶¶s 30-36. Independent of the Amended Complaint, the evidence demonstrates that the Plaintiff has never paid the participant contributions to the Welfare Fund that are a condition of eligibility for benefits under the Plan, and as such, has no right to assert a Section 502 claim seeking benefits. See e.g. Marotta v. Road Carrier Local 707 Welfare Fund, 100 F.Supp.2d 149, 164 (E.D.N.Y. 2000)(granting summary judgment dismissing Section 502 claim against welfare fund seeking spousal coverage because the participant had not qualified for the coverage at the time of his retirement)

      3.    Plaintiff Did Not Exhaust His Administrative Remedies Under the Plan

Even if the Plaintiff were capable of getting beyond the legal hurdles identified in subpoint 1 and 2 of this section, his ERISA Section 502 claim would still have to be dismissed because he has not exhausted the administrative remedies under the Plan. The Second Circuit has recognized "the firmly established federal policy favoring exhaustion of administrative remedies in ERISA cases." See Alfarone v. Bernie Wolff Construction, 788 F.2d 76, 79 (2d Cir.), cert. denied, 479 U.S. 915 (1986). Thus, the Second Circuit has consistently held that available Plan administrative remedies must be exhausted prior to the initiation of litigation seeking benefits under the Plan. See e.g. Leonelli, supra, 887 F.2d at 1199 (affirming denial of leave to amend complaint where the plaintiff made no attempt, as required, to exhaust the administrative remedies provided for under the plan); see also Kennedy v. Empire Blue Cross & Blue Shield, 989 F.2d 588, 593-96 (2d Cir. 1993)(affirming judgment of the district court dismissing

plaintiff class' complaint on grounds of failure to exhaust administrative remedies).

Here, the Plan sates:

> **Limitation on When a Lawsuit May Be Started**
>
> You may not start a lawsuit to obtain benefits until after you have requested a review and a final decision has been reached on review, or until 90 days have elapsed since you filed a request for review if you have not received a final decision or notice that an additional 60 days will be necessary to reach a final decision.  No lawsuit may be started more than three years after the time proof of claim must be given. See Costello Dec. at Exhibit "A" (SPD) at page 56

In this case, the Plaintiff's Amended Complaint fails to allege any facts demonstrating that he exhausted the administrative remedies under the Plan prior to initiating this litigation, and the evidence confirms this conclusion.  See Costello Dec. at ¶ 10 ("To date, Mr. Paulino has not sought a review by the Trustees of the Welfare Fund's determination that he was not eligible for benefits based upon his failure to make the participant contributions, as required under the terms of the Plan.")  On this basis as well, the Plaintiff's ERISA Section 502 claim must be dismissed.

B.    Plaintiff's ERISA Section 510 Claim Should Be Dismissed

Plaintiff's Amended Complaint also purports to state a claim against Local 2 for interfering with protected rights in violation of Section 510 of ERISA, 29 U.S.C. §1140 because the Union allegedly terminated his benefits based upon his refusal to sign the IRS Section 125 authorization forms.  See Amended Complaint at ¶ 72.  As discussed in Point A above, the Section 125 authorization was presented to permit the Plaintiff to make the required employee contributions to the Plan on a pre-tax basis, and by his own admission, the Plaintiff refused to sign the authorization or to make the employee

contributions to the Plan on a direct payment basis, thus rendering him ineligible for benefits. See Amended Complaint at ¶¶ 30-38. The Amended Complaint simply does not state a cause of action against Local 2 for a violation of ERISA Section 510 and should be dismissed.

Section 510 of ERISA makes it "unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan, ... or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan." See 29 U.S.C. § 1140.[9] In Maguire v. Level Sights, Inc., 2004 WL 1621187 (S.D.N.Y., July 19, 2004)(GBD) this Court specifically recognized that in order to state a claim under ERISA Section 510, a plaintiff must allege that (a) a defendant took some type of adverse employment action intended to interfere with the plaintiff's attainment of benefit rights under the plan, and (b) the action was related to and represented an adverse change in the employment relationship. Id. 2004 WL 1621187 at *2. See Maguire v. Level Sights, Inc., 2004 WL 1621187 at *2 (S.D.N.Y., July 19, 2004); citing Degrooth v. General Dynamics Corp., 837 F.Supp. 485, 489 (D.Conn.1993), aff'd, 28 F.3d 103 (2d Cir.1994) (citations omitted); see also, DeSimone v. Transprint USA, Inc., 1996 WL 209951, *3 (S.D.N.Y. Apr. 29, 1996)

---

[9]    The Amended Complaint and evidence confirm that the Union was not the party that terminated the benefits, but merely advised the Plan Administrator that Mr. Paulino had refused to sign the authorization to participate in the New York Post Section 125 Plan. See Amended Complaint at ¶72; see also Costello Decl. at ¶9-10 (benefits were terminated because Paulino was not eligible as a result of his failure to make employee contributions through a salary deduction or on a direct payment basis)

(citation omitted).  In this case, the Amended Complaint totally fails to meet the basic requirements to plead a viable claim under ERISA Section 510.  The Amended Complaint fails to allege a single act by Local 2 that affected the Plaintiff's employee-employer relationship with the New York Post, and which resulted in the termination of the Plaintiff's benefits.  Accordingly, the claim should be dismissed as a matter of law.  See Downes v. JP Morgan Chase & Co., 2004 WL 1277991 at *5 (S.D.N.Y., June 8, 2004)(GEL)(dismissing ERISA Section 510 claim in the absence of any allegations that the defendant disrupted employment that was designed to preclude plaintiff from obtaining benefits)

## V.    PLAINTIFF' DUTY OF FAIR REPRESENTATION CLAIM IS TIME BARRED

The Amended Complaint also purports to advance a claim against Local 2 for a violation of its duty of fair representation ("DFR").  See Amended Complaint at ¶¶s 75-77.  That claim should also be dismissed because it is barred by the 6-month statue of limitations applicable to claim for DFR.

It is well settled that the statute of limitations on a DFR claim is 6 months. DelCostello v. International Brotherhood of Teamsters, 462 U.S. 151 (1983); see also Woods v. Dunlop Tire Corporation, 972 F.2d 36 (2d. Cir. 1992); Monarch Long Beach Corporation v. Soft Drink Workers Local 812, 762 F.2d 228 (2d. Cir. 1985); Kavowras v. The New York Times Co. and Newspaper & Mail Deliverers' Union, 328 F. 3d 50 (2d Cir. 2003). As discussed by the Supreme Court in DelCostello, the 6 month period was

derived through reference to §10(b) of the National Labor Relations Act, which itself establishes a 6 month time period for charges of unfair labor practices. Id. 462 U.S. at 170.

The statute of limitations on a duty of fair representation claim begins to run as soon as the plaintiff knows, or reasonably should have known, of the conduct that is claimed to constitute the breach. See Flanigan v. Truck Drivers Local No. 671, 942 F.2d 824 (2d. Cir. 1991)("as a general rule, the six-month limitation period begins to run when a plaintiff knows or reasonably should know that the union has breached its duty of fair representation"). Stated another way, "where a union refuses or neglects to assist a union member, decides to stop assisting a union member, or acts against the interest of a member, a breach of duty by the union is apparent to the member at the time she learns of the union action or inaction about which she complains." Ghartey v. St. John's Queens Hospital, 869 F.2d 160, 165 (2d. Cir. 1989).

In this case, the Plaintiff has failed to timely commence his purported DFR claim against Local 2, even if the Court were to assume that one exists. As set forth in the Amended Complaint, the Plaintiff's claim is based upon the theory that "Local 2 acted in an arbitrary, capricious and discriminatory manner and in bad faith…by refusing to appropriately place Plaintiff on the Junior Revisions List." See Amended Complaint at ¶ 75. In the Amended Complaint, the Plaintiff alleges that he first became aware of the alleged irregularity in regard to the Junior Priority Revision list in February of 2004, and that he unsuccessfully addressed the issue with the Union's officials (including Mr. McPhee and President Loftus) that same month. See Amended Complaint at ¶¶s 24-28.

23

These events, which form the basis of the Plaintiff's claim, occurred more than 16 months prior to the filing of this action on May 11, 2005, and as such, the court should conclude that the Plaintiff's DFR claim is time barred, consistent with the decision of the NLRB.[10] See April 29, 2005 NLRB Decision (Exhibit "A") at pages 1-2.

## VI.    LOCAL 2 SHOULD BE REIMBURSED FOR THE COUNSEL FEES EXPENDED IN DEFENDING THIS ACTION AND FILING THIS MOTION

As discussed throughout this memorandum of law, the legal and factual defects that have been identified demonstrate that this action is frivolous, and that it was brought in bad faith because no reasonable investigation of the facts nor the law were actually undertaken by the Plaintiff's counsel before its commencement.  In fact, as discussed in Point I, the Amended Complaint actually misrepresents that the Plaintiff's employment with the New York Post was terminated in an attempt to support the discrimination claims, when that was clearly not the case.  In these circumstances, Local 2 would request that the Court issue an order imposing sanctions pursuant to 28 U.S.C. §1927 and the Court's inherent power, and direct that the Union be reimbursed for the membership dues it was required to expend 2 for legal fees to defend this action and file this motion. See 28 U.S.C. §1927 ("Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to

---

[10]    In the proceeding before the NLRB, the Plaintiff claimed that he was told that his evidence would not be considered in August 2004.  See April 29, 2005 NLRB Decision (Exhibit "A") at page 1.

satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."); see also United States v. International Brotherhood of Teamsters, 948 F.2d 1338, 1345 (2d Cir.1991)(an award under § 1927 is proper when the attorney's actions are so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose); see also Revson v. Cinque & Cinque, 221 F.3d 71, 79 (2d Cir. 2000) (court has power to award attorneys' fees under the inherent power doctrine).

## CONCLUSION

For the reasons set forth herein, the action as against Local 2 must be dismissed and the Plaintiff and his counsel should be directed to reimburse the defendant for its reasonable attorneys' fees.

Dated:      New York, New York
            August 1, 2005

Respectfully submitted,

SHAPIRO, BEILLY, ROSENBERG,
ARONOWITZ, LEVY & FOX, LLP

By:_____
          Barry I. Levy (BL 2190)
225 Broadway, 13th Floor
New York, NY 10007
(212) 267-9020

*Counsel for Defendant, New York Newspaper Printing Pressmen's Union Local No. 2*