UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
DANIEL PAULINO

|  |  |
|---|---|
| **Mr. Paulino,** | **SECOND AMENDED COMPLAINT** |
| -against- | **Index No. 05-CV-4647 (GBD) (MHD)** |
| **THE NEW YORK PRINTING PRESSMEN'S UNION, LOCAL TWO, NYP HOLDINGS, INC., AND PRESSMEN'S PUBLISHERS' BENEFITS FUND** | **Jury Trial Demanded** |
| **Defendants.** | |

------------------------------------------------------------------------X

### I. Nature of the Action

1.    Mr. Paulino, **Daniel Paulino**, ("Mr. Paulino" or "Plaintiff") by and through his attorneys, bring this civil action to obtain legal and equitable relief against Defendant, **New York Pressmen's Union No. 2** ("Union"); Defendant, **NYP Holdings, Inc.** ("NY Post"); and Defendant, **Pressmen's Publishers' Benefits Fund** ("Fund").

2.    The News Corporation US, through its subsidiary, Defendant NYP Holdings, Inc., operates the New York Post newspaper, the 7th largest daily newspaper in the U.S. The NY Post has a 204-year history. In recent years, the NY Post has lost as much as $30M per year but has enjoyed the title of "fastest growing weekly newspaper" in part because of a cover price of $0.25 and a $250M investment in printing presses.

3.    Defendant New York Pressmen's Union No. 2 is the collective bargaining representative for the NY Post unit employees. The most recent collective-bargaining agreement was effective August 2000 and expires October 31, 2015.

1

4.    Journeymen are senior employees who run the NY Post's presses. Junior Pressmen, or Juniors, assist the Journeymen in running the presses. In order to become a Journeyman, a Junior must ordinarily work a specified amount of time, averaging a specified number of shifts a week. The decision to promote Juniors to Journeymen is made exclusively by the Union. In the absence of Journeymen, Juniors may be assigned the work of running the presses in order of their Union seniority.

## II. Preliminary Statement

5.    This complaint is filed and this action is instituted against Defendant **Union** under the Civil Rights Act of 1964, as amended 42 U.S.C.  § 2000e *et seq.* ("Title VII") and the Labor-Management Reporting and Disclosure Act of 1959, as amended 29 U.S.C. § 412.

6.    This complaint is filed and this action is instituted against Defendant **NY Post** under the Civil Rights Act of 1964, as amended 42 U.S.C.  § 2000e *et seq.* ("Title VII"), the New York State Human Rights Law, N.Y. Executive Law  § 290 *et seq.* ("NY HRL"), the New York City Human Rights Law, N.Y. City Administrative Code §  8-101 *et seq.* ("NYC HRL"), and the Employee Retirement Income Security Act of 1974, as amended 29 U.S.C. § 1001 *et seq.*

7.    Mr. Paulino filed a timely charge of discrimination with the Equal Employment Opportunity Commission (hereinafter EEOC").   Mr. Paulino brings this action within ninety (90) days of the receipt of a Notice of Right to Sue, issued by the EEOC on February 15, 2005, a true and accurate copy of which is attached hereto as Exhibit A.

8.    This complaint is filed and this action is instituted against Defendant **Fund** under the Employee Retirement Income Security Act of 1974, as amended 29 U.S.C. § 1001 *et seq.*

### III. Jurisdiction and Venue

9.    Venue is proper in this District under 28 U.S.C. § 1391(c) because the unlawful conduct of **Union, NY Post, and Fund** occurred within the State of New York, New York County.

10.    This Court has subject matter jurisdiction over this action, and jurisdiction over Defendant **Union**, pursuant to 28 U.S.C. §§ 1331 (Federal question).

11.    This Court has subject matter jurisdiction over this action, and jurisdiction over Defendant **NY Post**, pursuant to 28 U.S.C. §§ 1331 (Federal question), 29 U.S.C. § 1132(e)(1).

12.    This Court has subject matter jurisdiction over this action, and jurisdiction over Defendant **Fund**, pursuant to 28 U.S.C. §§ 1331 (Federal question), 29 U.S.C. § 1132(e)(1).

### IV. Parties

13.    Plaintiff, **Daniel Paulino**, (hereinafter "Mr. Paulino") was at all times relevant herein, a citizen of the State of New York residing in New York County.

14.    **Mr. Paulino**, is a "person," and "employee" of Defendant NY Post, a "member" of Defendant Union, and a "complaining party" as those terms are defined by 42 U.S.C. § § 2000e(a)(f) & (l), 29 U.S.C. § § 402(d)(f) & (o), 29 U.S.C. § 1002(6) & (9).

15.    **Mr. Paulino,** is a "participant" and a "beneficiary" as those terms are defined by 29 U.S.C. § 1002(7) & (8).

16.    **Mr. Paulino,** is an "employee" within the meaning of 29 U.S.C. 630(f), NYSHRL 292(5) and Section 190(2) of the New York Labor Law, N.Y. Lab. Law § 190(2) (McKinney 1986 Supp. 2001). **Mr. Paulino** is a person within the meaning of NYSHRL 292(1).

17.    Upon information and belief, Defendant, **New York Printing Pressmen's Union, Local 2,** is an unincorporated association doing business at 275 Seventh Avenue, Suite 1500, New York, New York 10001, and is a "labor organization" and "respondent" as defined by 42 U.S.C. § 2000e(d) & (n), 29 U.S.C. § 402(i).

18.    Upon information and belief, Defendant **NYP Holdings, Inc.,** is a subsidiary of The News Corporation US, a reorganized Australian corporation (formerly The News Corporation Limited) now incorporated in the U.S. under the laws of the State of Delaware, and has global headquarters in New York City.

19.    Upon information and belief, Defendant **NYP Holdings, Inc.,** is a domestic corporation doing business at 1211 Avenue of the Americas, New York, New York 10036.

20.    Upon information and belief, Defendant **NYP Holdings, Inc.,** operates the New York Post newspaper, is an "employer" as that term is defined by 42 U.S.C. § 2000e(b), 29 U.S.C. § 402(e)(1) & (2), 29 U.S.C. § 1002(5), and a "plan sponsor" as that term is defined by 29 U.S.C. § 1002(16)(B)(iii).

21.    Upon information and belief, Defendant, **NYP Holdings, Inc.** is also a "party in interest" as that term is defined by 29 U.S.C. § 1002(14)l, a designated "co-

administrator" as that term is defined by 29 U.S.C. § 1002(16)(A)(i).

22.    Upon information and belief, Defendant, **Fund,** is an "employee organization" as that term is defined by 29 U.S.C. § 1002(4), "a plan sponsor" as that term is defined by 29 U.S.C. § 1002(16)(B)(iii).  It sponsors an "employee benefit plan," which provides both welfare benefits and pension benefits on behalf of  participants as defined in 29 U.S.C. §  1002(1)(A)(B) & (3).

23.    Upon information and belief, the plan is co-administered by Defendant **NY Post** and the **Fund** and is a "multiemployer plan" as that term is defined by 29 U.S.C.

§ 1002(37)(A)(ii).

24.    Upon information and belief, the plan offered to Mr. Paulino is an "individual account plan" and a "defined contribution plan" as those terms are defined by 29 U.S.C. § 1002(34).

25.    Upon information and belief, the **Fund** is also a "party in interest" as that term is defined by 29 U.S.C. § 1002(14)(A), a designated "co-administrator" as that term is defined by 29 U.S.C. § 1002(16)(A)(i).

### V.  Statement of Facts

26.    Mr. Paulino is a Hispanic male.

27.    On or about July 2000, Mr. Paulino was hired by NYP Holdings as an apprentice.

28.    Throughout his employment with NYP Holdings, Mr. Paulino performed his job duties in a satisfactory manner.

29.    On or about September 12, 2001, he received a letter from NYP Holdings advising him he would be eligible to advance to journeyman status in July 2004.


30.    Mr. Paulino was told by the NLRB that there are several factors that make up a

5

complex formula for determining eligibility to be advanced to journeyman status. He believes there is widespread manipulation of the factors used to determine journeyman eligibility.

31.   Union membership is a factor in determining eligibility for advancement to journeyman status. The number of shifts worked is a factor used to determine the date a person is eligible to become a member of the union.  Mr. Paulino became a member of the union in September 2000.

32.  Mr. Paulino knows, from sources within the Union, that the Junior Priority Revisions List is used to establish and adjust a member's order in which he/she is eligible to be advanced to journeyman status.

33.  Mr. Paulino knows, from papers filed by the defendant Union that another list, the Shop Priority List, identifies journeymen and juniors separately in their order of priority. Using that data, persons are ranked from the most senior to the least senior.

34.   On or about February 2004 Mr. Paulino received a Junior Priority Revisions List dated April 10, 2003.  After reviewing this list, he determined that seniority was based upon the number of shifts worked.  The April 2003 Junior Priority Revision List listed him as number one hundred ninety-three (193) out of two hundred and three (203) employees on the priority list.

35.  Upon review of the list, Mr. Paulino noticed Gary Leonessa (hereinafter "Leonessa"), a Caucasian male, was listed as number one hundred three (103), which is higher on the priority list.   Based on the dates when the two men started working, he knew that Leonessa did not become a member of Local 2 until 2001, approximately one (1) year subsequent to Mr. Paulino's membership.

36.    On the next year's list (dated February 1, 2004), which he received from sources within the Union, Mr. Paulino was listed as number eighty-six (86) on the priority list. Carol Margolin (a.k.a. Colman) (hereinafter "Margolin"), a Caucasian female, appeared ranked in higher priority on this list at number eighty (80), even though she was listed below Mr. Paulino on the April 10, 2003 list.

37.    After reviewing the February seniority list, Mr. Paulino spoke to Dan MacPhee (hereinafter "MacPhee"), a union official in charge of preparing the Revisions List.  He advised MacPhee there were several errors on both the April 2003 and February 2004 priority lists.  MacPhee reiterated that journeyman status was based on the number of shifts an employee worked for NYP Holdings. MacPhee then suggested Mr. Paulino bring in his payroll records for MacPhee to review to determine whether or not Mr. Paulino worked the appropriate shifts required to become a journeyman.

38.    Shortly thereafter, Mr. Paulino presented his payroll records to MacPhee. MacPhee reviewed Mr. Paulino's records and determined Mr. Paulino had worked enough shifts to be promoted to a journeyman. Nevertheless, MacPhee advised Mr. Paulino, "It doesn't matter how many shifts you've worked, I'm not going to put you in front of those people."

39.    In February 2004, following a meeting with MacPhee, Mr. Paulino contacted William Loftus (hereinafter "Loftus") President of Local 2, to inquire what criteria was used to determine which employees would be elevated to journeyman status.  He complained to Loftus that Local 2 was not abiding by the bylaws regarding journeyman status.  Loftus failed to respond to his inquiry or complaint.

40.    In or around October 2004, Mr. Paulino advised Linda Babajko, Director of Human

Resources for The Post, of his concerns regarding the Union's manipulation of lists as they relate to elevation to journeyman status.

41.    In or around November 2004, he wrote a letter to her confirming their discussion

42.    In or around the summer of 2004, Mr. Paulino learned of the Union's plan to change members' benefits.  Under the new plan, union members were required to authorize the withholding of $50 per paycheck in pre-tax dollars to fund the plan.   He was advised that union members ratified the plan in a "well-attended" meeting in February 2004.

43.    Mr. Paulino believed the Union replaced sound business practice with a unilateral campaign to change administrative policies and these were designed to be a smoke screen for its own failures.  Despite assertions to the contrary, the special meeting was not well-attended, was held at an inconvenient time and was calculated to minimize organized resistance to the proposed changes.

44.    While contesting defendant Union's leadership about these provisions (to alter the administration of the welfare benefit funds), Mr. Paulino uncovered a Union leadership lacking energy and vision, and a shaky record of weak financial controls.

45.    Based upon Union's refusal to respond to his earlier inquiries or correctly place him on the list to be elevated to journeyman, Mr. Paulino was unconvinced the funds would be used appropriately.

46.    Mr. Paulino's union membership was suspended in November 2004 because he refused to sign the enrollment form without clarification of issues relating to journeyman status and the welfare fund.  The Union beached of its duty under its Constitution and bylaws by not affording Mr. Paulino a full and fair hearing before suspending him.

47.  Mr. Paulino received a letter from Union President Loftus directing him to attend Union meeting on December 6, 2004.  .

48.  Mr. Paulino attended the meeting, but the Union refused to address his concerns about journeyman status.

49.  Shortly thereafter, Mr. Paulino applied for medical benefits for his wife, Rosa Paulino (hereinafter "Mrs. Paulino").   Mrs. Paulino became pregnant on or around October 2004.

50.  In January 2005, he received two (2) cards (one in his name and one in his wife's name) from Empire/Bluecross Blueshield. The letter accompanying the cards instructed Mr. Paulino to call Empire/Bluecross Blueshield to confirm activation of the cards. However, when he called, Empire/Bluecross Blueshield informed him that his medical insurance had been cancelled as of January 1, 2005.

51. On February 10, 2005, Mr. Paulino received a letter from Empire/Bluecross Blueshield confirming cancellation effective January 1, 2005.  He was never officially notified or advised by defendant Trustees about the termination of his medical benefits, nor did he receive any notice of continuation of coverage or other appropriate information during his time of need.

52.  Through sources at the Union, Mr. Paulino learned he was among a group of employees who refused to sign the welfare authorization enrollment form.  He believes some of those employees did not have their benefits terminated and that selective actions were taken against him because of his resistance to Union and Trustee interference with his employee welfare benefits.

53.  Mr. Paulino attempted to purchase medical coverage Mrs. Paulino, but he was

9

unable to obtain insurance coverage for Mrs. Paulino because her pregnancy was considered a "pre-existing condition."

54.    The December 6, 2004 meeting, in which Mr. Paulino was told to "comply with your obligations" was an attempt to circumvent the Union Constitution and By-Laws.

55.  According to the Union Constitution and By-Laws, Mr. Paulino never received a full and fair opportunity to defend his actions at a trial.

## VI. Claims for Relief

### FIRST CLAIM FOR RELIEF
### PAULINO V. THE NEW YORK PRINTING PRESSMEN'S UNION LOCAL 2

56.  Mr. Paulino repeats and realleges each and every allegation contained herein.

57.  Defendant Union violated 42 U.S.C. § 2000e-2(c)(2) (race discrimination with respect to limiting, segregating or classifying employees) when Union representatives were made aware of errors manifest in several lists maintained for union use and failed to correct those errors, thereby harming Mr. Paulino.

58. As a proximate result of Defendants' actions, Plaintiff has suffered and continues to suffer severe and lasting embarrassment, humiliation, anguish, depression, and other incidental and consequential damages and expenses.

59.  The conduct of Defendants was done in conscious disregard of Plaintiff's rights. Therefore, Plaintiff is entitled to equitable and injunctive relief, an award of punitive damages, expenses and attorney's fees from defendant in an amount to be determined at trial.

## SECOND CLAIM FOR RELIEF
### PAULINO V. THE NEW YORK PRINTING PRESSMEN'S UNION LOCAL 2

60. Mr. Paulino repeats and realleges each and every allegation contained herein.

61. Defendant Union violated 42 U.S.C. § 2000e-2(c)(3) (race discrimination with respect to causing an employer to discriminate) when Union representatives were made aware of errors manifest in several lists maintained for union use and failed to correct those errors, thereby harming Mr. Paulino.

62. As a proximate result of Defendants' actions, Plaintiff has suffered and continues to suffer severe and lasting embarrassment, humiliation, anguish, depression, and other incidental and consequential damages and expenses.

63. The conduct of Defendants was done in conscious disregard of Plaintiff's rights. Therefore, Plaintiff is entitled to equitable and injunctive relief, an award of punitive damages, expenses and attorney's fees from defendant in an amount to be determined at trial.

## THIRD CLAIM FOR RELIEF
### PAULINO V. THE NEW YORK PRINTING PRESSMEN'S UNION LOCAL 2

64. Mr. Paulino repeats and realleges each and every allegation contained herein.

65. Defendant Union violated 42 U.S.C. § 2000e-2(m) (unlawful employment practices where race is a motivating factor) when Union representatives disregarded Mr. Paulino's inquiries regarding a complicated mathematical formula integrating several different lists used to determine eligibility for elevation to journeyman status; when Union representatives deviated from the protocol established in Union by-laws for

11

determining journeyman status

66. As a proximate result of Defendants' actions, Plaintiff has suffered and continues to suffer severe and lasting embarrassment, humiliation, anguish, depression, and other incidental and consequential damages and expenses.

67. The conduct of Defendants was done in conscious disregard of Plaintiff's rights. Therefore, Plaintiff is entitled to equitable and injunctive relief, an award of punitive damages, expenses and attorney's fees from defendant in an amount to be determined at trial.

### FOURTH CLAIM FOR RELIEF
### PAULINO V. THE NEW YORK PRINTING PRESSMEN'S UNION LOCAL 2

68. Mr. Paulino repeats and realleges each and every allegation contained herein.

69. Defendant Union violated 42 U.S.C. § 2000e-3(a) (discrimination for making charges, assisting or participating in enforcement proceedings) when Union representatives acted against Mr. Paulino's rights and interests including, but not limited to, the following:  interference or obstruction of his medical benefits, the exertion of undue pressure to sign welfare authorization enrollment form despite justifiable reservations and the imposition of a form of discipline for opposing these individual practices;

70. As a proximate result of Defendants' actions, Plaintiff has suffered and continues to suffer severe and lasting embarrassment, humiliation, anguish, depression, and other incidental and consequential damages and expenses.

71. The conduct of Defendants was done in conscious disregard of Plaintiff's rights. Therefore, Plaintiff is entitled to equitable and injunctive relief, an award of punitive

damages, expenses and attorney's fees from defendant in an amount to be determined at trial.

### FIFTH CLAIM FOR RELIEF
### PAULINO V. THE NEW YORK PRINTING PRESSMEN'S UNION LOCAL 2

72. Mr. Paulino repeats and realleges each and every allegation contained herein.

73. Defendant Union violated 29 U.S.C. § 411(a)(2) when Union representatives breached their trust with respect to the actual use of pre-tax wages for the mixed purpose of increasing the solvency of the pension fund and paying monthly health insurance premiums; disregarded the right to understand and access health benefits by coercing Mr. Paulino's enrollment and subsequently subjecting him to a period of suspension for his lawful opposition to the practice.

74. As a proximate result of Defendants' actions, Plaintiff has suffered and continues to suffer severe and lasting embarrassment, humiliation, anguish, depression, and other incidental and consequential damages and expenses.

75. The conduct of Defendants was done in conscious disregard of Plaintiff's rights. Therefore, Plaintiff is entitled to equitable and injunctive relief, expenses and attorney's fees from defendant in an amount to be determined at trial.

### SIXTH CLAIM FOR RELIEF
### PAULINO V. THE NEW YORK PRINTING PRESSMEN'S UNION LOCAL 2

76. Mr. Paulino repeats and realleges each and every allegation contained herein.

77 Defendant Union violated 29 U.S.C. § 411(a)(2) & 415 when Union representatives ignored, delayed and neglected to render effective assistance to Mr. Paulino's legitimate assertion of a labor dispute in connection with maintaining, changing or seeking to

arrange terms and conditions for employee welfare benefit plans. Defendant Union is liable for its actions and omissions regardless of whether Mr. Paulino and the Union stood in proximate relation of employer and employee. 29 U.S.C. § 402(g).

78. As a proximate result of Defendants' actions, Plaintiff has suffered and continues to suffer severe and lasting embarrassment, humiliation, anguish, depression, and other incidental and consequential damages and expenses.

79. The conduct of Defendants was done in conscious disregard of Plaintiff's rights. Therefore, Plaintiff is entitled to equitable and injunctive relief, expenses and attorney's fees from defendant in an amount to be determined at trial.

## SEVENTH CLAIM FOR RELIEF
### PAULINO V. THE NEW YORK PRINTING PRESSMEN'S UNION LOCAL 2

80. Mr. Paulino repeats and realleges each and every allegation contained herein.

81  Defendant Union violated 29 U.S.C. § 411(a)(2) when Union representatives breached the Union Constitution and bylaws by failing to provide Mr. Paulino with a full and fair hearing before suspending his membership in the Union.

82. As a proximate result of Defendants' actions, Plaintiff has suffered and continues to suffer severe and lasting embarrassment, humiliation, anguish, depression, and other incidental and consequential damages and expenses.

83. The conduct of Defendants was done in conscious disregard of Plaintiff's rights. Therefore, Plaintiff is entitled to equitable and injunctive relief, expenses and attorney's fees from defendant in an amount to be determined at trial.

## EIGHTH CLAIM FOR RELIEF
## PAULINO V. THE NEW YORK POST

84.  Mr. Paulino repeats and realleges each and every allegation contained herein.

85.  Defendant **NY Post**  violated 42 U.S.C. § 2000e-2(m) (unlawful employment practices where race is a motivating factor) when NY Post representatives disregarded Mr. Paulino's inquiries regarding a complicated mathematical formula integrating several different lists used to determine eligibility for elevation to journeyman status; when NY Post representatives failed to take corrective action or otherwise oppose an unlawful practice when informed that the Union had deviated from the protocol established in Union by-laws for determining journeyman status;

86.  As a proximate result of Defendants' actions, Plaintiff has suffered and continues to suffer severe and lasting embarrassment, humiliation, anguish, depression, and other incidental and consequential damages and expenses.

87.  The conduct of Defendants was done in conscious disregard of Plaintiff's rights. Therefore, Plaintiff is entitled to equitable and injunctive relief, punitive damages, expenses and attorney's fees from defendant in an amount to be determined at trial.

## NINTH CLAIM FOR RELIEF
## PAULINO V. THE NEW YORK POST

88.  Mr. Paulino repeats and realleges each and every allegation contained herein.

89.  Defendant **NY Post** violated 42 U.S.C. § 2000e-3(a) (discrimination for making charges, assisting or participating in enforcement proceedings) when Union representatives acted against Mr. Paulino's rights and interests including, but not limited to, the following:  interference or obstruction of his medical benefits, the exertion of undue pressure to sign welfare authorization enrollment form despite justifiable

15

reservations and the imposition of a form of discipline for opposing these individual practices.

90.  As a proximate result of Defendants' actions, Plaintiff has suffered and continues to suffer severe and lasting embarrassment, humiliation, anguish, depression, and other incidental and consequential damages and expenses.

91.  The conduct of Defendants was done in conscious disregard of Plaintiff's rights. Therefore, Plaintiff is entitled to equitable and injunctive relief, punitive damages, expenses and attorney's fees from defendant in an amount to be determined at trial.


### TENTH CLAIM FOR RELIEF
### PAULINO V. THE FUND AND THE NEW YORK POST AS CO-ADMINISTRATORS

92.  Mr. Paulino repeats and realleges each and every allegation contained herein.

93.  Defendant **Fund** interfered with Mr. Paulino's rights under his health benefit plan when it failed to adequately explain the reasons for the re-enrollment.

94.  Claims of breach of fiduciary duty are governed by ERISA sections 409(a) and 502(a)(2).  Congress has directly addressed the question of actions for breach of fiduciary duty in these sections, and Mr. Paulino is withdrawing any references a cause of action under the Consolidated Omnibus Budget Reconciliation Act ("COBRA"), 29 U.S.C. § 1161 et seq. mentioned in the Amended Complaint.

95.  ERISA contains a series of interrelated provisions which (1) assign fiduciary status to those who perform certain plan functions; (2) establish standards of conduct according to which such fiduciary duties must be discharged; (3) impose liability and specify available remedies for violations of those standards; and (4) create a cause of action to redress such violations. These provisions governing the obligations and

16

liabilities of ERISA fiduciaries form a seamless statutory web.

96.  Within its definitions section, ERISA provides that Defendant **Fund** is "a fiduciary" with respect to a plan, and the plan documents show this Defendant exercises discretionary control or authority over the plan's management, administration, or assets. 29 U.S.C. § 1002(21)(A).

97.  ERISA requires fiduciaries *inter alia* to discharge their plan-related duties prudently and solely in the interests of plan participants. 29 U.S.C. § 1104(a)(1)(A)(i).

98.  In turn, one of the statute's "six carefully integrated civil enforcement provisions," provides that a civil action may be brought by Mr. Paulino, a participant, beneficiary for appropriate relief under section 409 of this title." 29 U.S.C. § 1132(a)(2).  This section is thus "the enforcement provision" which imposes liability upon errant fiduciaries, and creates a cause of action against them, and specifies the available remedies.

99.  ERISA sections enforceable by Mr. Paulino include the reporting and disclosure provisions, the health care coverage continuation provisions, and the prohibitions against interference with rights protected by ERISA.

100.  When Mr. Paulino asked the plan administrator / trustee William Loftus about the need to re-enroll into his already existing health plan, the health plan SPD provides that the administrator is responsible for interpreting the plan. Here, Loftus failed to provide a coherent explanation or referral to the appropriate source for information about the plan's requirements respecting eligibility for participation and benefits, the "circumstances which may result in disqualification, ineligibility, or denial or loss of benefits, and the procedures to be followed thereafter as required by  29 U.S.C. § 1022(b). 29 U.S.C. § 1022(a)(1).  In fact, Loftus and the other trustees were well aware that prior communications on the need for the re-enrollment were haphazard at best.

101.  In the absence of adequate information regarding the specifics of his plan, ERISA

17

shifts the risk of loss for the misunderstanding from the employee to **Fund.**    Mr. Paulino, under the totality of the circumstances believed the Defendant **Union** had imposed a change unfairly, and when the controversy surfaced, he had to resort to oral inquiries to learn about his benefits and the effect it would have on his spouse's pregnancy.

102.  Defendant **Fund** did not faithfully execute its twin duties as a fiduciary, and failed to provide Mr. Paulino with sufficient information so that Mr. Paulino understood all rights and duties germane to those circumstances. **Fund**, based on the manner in which the plan changes were relayed, should have recognized that, with respect to Mr. Paulino, the risk of misunderstanding was particularly acute in oral communication. Providing a more transparent rationale and process for maintaining his health benefits would not have resulted in more benefit plan paperwork.

103.  The effect of Defendant **Fund's** actions and omissions was to interfere with Mr. Paulino's medical benefits, so that they were terminated, the medical costs relating to his spouse's pregnancy were shifted inappropriately and these problems were not corrected in violation of  29 U.S.C. § 1104.

104.  Defendant **NY Post**, as a co-administrator of the plan, shares liability for any interference with Mr. Paulino's rights under his health benefit plan.

105.  The conduct of Defendants was done in conscious disregard of Plaintiff's rights. Therefore, Plaintiff is entitled to equitable and injunctive relief, statutory damages, expenses, and attorney's fees from defendant in an amount to be determined at trial.

### VIII. DEMAND FOR JURY TRIAL

106.  Plaintiff repeats and realleges each and every allegation contained herein.

107.  Plaintiff hereby demands a trial by jury.

**WHEREFORE**, as a result of the unlawful conduct and actions of the Defendants herein alleged, Plaintiff demands judgment:

a.. On the First Claim for Relief, adjudge Defendant, **NEW YORK PRINTING PRESSMEN'S UNION, LOCAL 2** violated 42 U.S.C. § § 2000e-2(c)(2) and award equitable and injunctive relief, punitive damages, expenses, and attorney's fees in an amount to be determined at trial plus interest.

b. On the Second Claim for Relief, adjudge Defendant, **NEW YORK PRINTING PRESSMEN'S UNION, LOCAL 2** violated 42 U.S.C. § § 2000e-2(c)2(c)(3) and equitable and injunctive relief, punitive damages, expenses, and attorney's fees in an amount to be determined at trial plus interest.

c. On the Third Claim for Relief, adjudge Defendant, **NEW YORK PRINTING PRESSMEN'S UNION, LOCAL 2** violated 42 U.S.C. § § 2000e-2(m) and award equitable and injunctive relief, punitive damages, expenses, and attorney's fees in an amount to be determined at trial plus interest.

d. On the Fourth Claim of Relief, adjudge Defendant, **NEW YORK PRINTING PRESSMEN'S UNION, LOCAL 2** violated 42 U.S.C. § § 2000e-3(a) and award equitable and injunctive relief, punitive damages, expenses, and attorney's fees in an amount to be determined at trial plus interest.

e. On the Fifth Claim of Relief, adjudge Defendant, **NEW YORK PRINTING PRESSMEN'S UNION, LOCAL 2** violated 29 U.S.C. §411(a)(2) and award equitable and injunctive relief, expenses, and attorney's fees in an amount to be determined at trial plus interest.

f. On the Sixth Claim of Relief, adjudge Defendant, **NEW YORK PRINTING PRESSMEN'S UNION, LOCAL 2** violated 29 U.S.C. §411(a)(2) & 415 and award equitable and injunctive relief, expenses, and attorney's fees in an amount to be

determined at trial plus interest

g.   On the Seventh Claim of Relief, adjudge Defendant, **NEW YORK PRINTING PRESSMEN'S UNION, LOCAL 2** violated 29 U.S.C. §411(a)(2) and award equitable and injunctive relief, expenses, and attorney's fees in an amount to be determined at trial plus interest

h.   On the Eighth Claim of Relief,  adjudge Defendant, **NEW YORK POST** violated 42 U.S.C. §2000e-2(m) and award equitable and injunctive relief, punitive damages, expenses, and attorney's fees in an amount to be determined at trial plus interest

i.  On the NInth Claim of Relief,  adjudge Defendant, **NEW YORK POST** violated 42 U.S.C. §2000e-3 and award equitable and injunctive relief, punitive damages, expenses, and attorney's fees in an amount to be determined at trial plus interest

j.  On the Tenth Claim of Relief,  adjudge Defendant, **FUND** having violated 29 U.S.C. § 1104(a)(1)(A)(i).and Defendant **NEW YORK POST** as having violated 29 U.S.C. 29 U.S.C. § 1105(a)(3)

In addition, Plaintiff requests the Court:

k.  Compel Defendant **Fund** and / or Defendant **NY Post** to make an accounting for the costs related to medical care for the prior 12 months under both his original health benefit plan, and the alternate plan relied upon by his spouse, and award to him the amount of any benefits owed to him or, in the alternative, to award appropriate subrogation costs to the alternate carrier;

l.  Compel Defendant **Fund** and / or Defendant **NY Post** to provide comprehensible information regarding the prior need for re-enrollment, and issue Mr. Paulino a letter or other appropriate document to provide to any current or future insurer

or health maintenance organization to ensure continuity of care for claims, enrollment or creditable coverage under a health benefits plan;

m.  Compel Defendant **Fund** to remove any tangible effects which relate to his suspension from the union as a result of his failure to participate in the plan as directed, including, but not limited to reimbursement of his costs, provide a comprehensible explanation for the need to re-enroll in the plan, and render appropriate assistance to restore his benefits;

n.  Compel Defendant **Union** and Defendant **NY Post** to provide a comprehensible explanation and accounting for his eligibility to become a Journeyman and ensure the system relied upon by both the labor organization and employer fairly places Mr. Paulino in the correct position of priority or preference;

o.  Award a civil penalty against Defendant **Union** and/or Defendant **NY Post** in an amount not to exceed $5,000 for the failure of the administrator(s) to comply with requests for information and documents under 29 U.S.C. § 1132(c)(1)(B) & (3) award attorney's fees under 29 U.S.C. § 1132(1)

p.  Award Mr. Paulino such other and further relief as is proper.

Dated: Farmingdale, New York
      September 6, 2005

                      FRANK & ASSOCIATES, PC
                      Attorneys for Plaintiff

By: _____
                  Neil M. Frank (NF 0521)
                  500 Bi-County Blvd., Suite 112N
                  Farmingdale, New York 11735
                  (631) 756-0400

**EXHIBIT "A"**

EEOC Form 161 (3/98)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

### DISMISSAL AND NOTICE OF RIGHTS

To:  **Daniel Paulino**
     **77 Fulton Street, Suite 3a**
     **New York, NY 10038**

From:  **New York District Office**
       **33 Whitehall Street**
       **5th Floor**
       **New York, NY 10004**

| | *On behalf of person(s) aggrieved whose identity is*<br>*CONFIDENTIAL (29 CFR § 1601.7(a))* |

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **160-2005-00711** | **Ricardo E. Jones,**<br>**Investigator** | **(212) 336-3778** |

### THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

[ ]  The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

[ ]  Your allegations did not involve a disability as defined by the Americans with Disabilities Act.

[ ]  The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

[ ]  Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge.

[ ]  Having been given 30 days in which to respond, you failed to provide information, failed to appear or be available for interviews/conferences, or otherwise failed to cooperate to the extent that it was not possible to resolve your charge.

[ ]  While reasonable efforts were made to locate you, we were not able to do so.

[ ]  You were given 30 days to accept a reasonable settlement offer that affords full relief for the harm you alleged.

[X]  The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

[ ]  The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

[ ]  Other *(briefly state)*

### - NOTICE OF SUIT RIGHTS -

*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, and/or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS of your receipt of this Notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a state claim may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

On behalf of the Commission

Enclosure(s)

**Spencer H. Lewis, Jr.,**
**Director**

2/15/05
*(Date Mailed)*

cc:  **NY PRINTING PRESSMANS UNION #2**
     **275 Seventh Avenue, Suite 1500**
     **New York, NY 10001**