LAW OFFICES

**SHAPIRO, BEILLY, ROSENBERG, ARONOWITZ, LEVY & FOX, LLP**

225 BROADWAY, 13TH FLOOR
NEW YORK, NEW YORK 10007
(212) 267-9020
FACSIMILE: (212) 608-2072

BARRY I. LEVY
-Partner-
_____

e-mail address: blevy@sbralf.com

February 17, 2006

By ECF Transmission
Honorable George B. Daniels
United States District Court Judge
Southern District of New York
40 Centre Street – Room 410
New York, New York 10007

    Re:    Daniel Paulino v. New York Newspaper Printing Pressmen's Union Local No. 2, et. al.
            Docket No.: 06 CV 0053 (GBD)
            Our File No.: S-19146

Dear Judge Daniels:

As Your Honor is aware, we are counsel to the New York Newspaper Printing Pressmen's Union Local No. 2 (the "Union") in this action.

Pursuant to Your Honor's direction, we are submitting this letter memorandum to outline the basis for the Union's renewal of its motion to dismiss and for summary judgment in this newly filed action. This action represents nothing more than a continuation of the action entitled <u>Daniel Paulino v. New York Printing Pressmen's Union Local No. 2, et. al.</u>, Docket No.: 05-CV-4647 (GBD) (hereinafter referred to as "Paulino I") which the Court has recently dismissed.

Because many of the arguments that the Union advanced to support its motion to dismiss and for summary judgment in Paulino I also apply to the claims that have been asserted in the present action, we will attempt to limit our discussion as to those arguments in this letter. Where possible, we will refer the Court to the relevant pages in the memorandums of law that were filed in Paulino I.

**SHAPIRO, BEILLY, ROSENBERG, ARONOWITZ, LEVY & FOX, LLP**

February 17, 2006
Page 2

---

For the Court's convenience, we are filing the following documents from Paulino I in connection with this letter memorandum. Within this letter memorandum, we have made reference to these documents as necessary, in the course of explaining why the Union's motion for summary judgment should be granted:

    1.    July 28, 2005 Declaration of Robert Costello (and exhibits)
    2.    July 29, 2005 Declaration of John Heffernan (and exhibits)
    3.    August 1, 2005 Declaration of Joseph Vincent (and exhibits)
    4.    September 21, 2005 Declaration of Michael Tortora (and exhibits)
    5.    Local 2's August 1, 2005 Memorandum of Law
    6.    August 26, 2005 Affidavit of Daniel Paulino (and exhibits)
    8.    Local 2's September 23, 2005 Memorandum of Law
    9.    Local 2's October 31, 2005 Letter Memorandum

In addition, we are filing the February 16, 2006 Supplemental Declaration of John Heffernan (and exhibits) which demonstrates conclusively, that there has been no discrimination and that Mr. Paulino's placement and order on the Revision List is correct.

## I.
## RELEVANT PROCEDURAL HISTORY

The original complaint in Paulino I was filed by Plaintiffs on May 7, 2005. An amended complaint in Paulino I was filed on July 7, 2005, prior to the Union answering or filing any form of a dispositive motion.

The Union filed a motion to dismiss, for summary judgment and for sanctions pursuant to 28 U.S.C. §1927 in Paulino I on August 1, 2005. In response to that motion, Plaintiff withdrew 6 of the 7 claims in the amended complaint and filed a motion seeking leave to serve a second amended complaint in order to add claims and parties.

The Union responded to the Plaintiff's motion to amend in Paulino I on September 23, 2005, and filed a memorandum of law and a series of supplemental affidavits. The Union also filed a supplemental letter memorandum on October 31, 2005.

**SHAPIRO, BEILLY, ROSENBERG, ARONOWITZ, LEVY & FOX, LLP**

February 17, 2006
Page 3

---

Through those submissions, the Union described why the proposed second amended complaint was substantively and procedurally deficient, and requested dismissal of the action, with prejudice and sanctions pursuant to 28 U.S.C. §1927.

Paulino I appeared before the Court for a hearing on December 14, 2005. As a result of that hearing, the Court denied the Plaintiff's request to proceed on the proposed second amended complaint, but granted Plaintiff leave to file a further proposed amended complaint. During that hearing, the Court specifically stated that it would provide Plaintiff with <u>one last attempt</u> to establish viable claims that would survive both the substantive and procedural challenges the Union had raised in its moving and/or opposing papers.

Rather than following the Court's direction, Plaintiff's counsel filed the present action on January 4, 2006. By order dated January 31, 2006, the Court elected to dismiss Paulino I and has permitted the Union's challenges to the newly proposed claims to be established in this action.

## II.
## THE PRESENT COMPLAINT

The claims that have been asserted in this Complaint (which is the fourth version of the claims against the Union) are generally based upon the same baseless legal theories as each of the complaints that have been successfully challenged by the Union in Paulino I. What is significant in this case, however, is that there are numerous material inconsistencies and contradictions between the Complaint and the sworn August 26, 2005 affidavit of Mr. Paulino in Paulino I.

When you boil down the allegations in this case, they are essentially as follows:

1. Mr. Paulino is a Hispanic male who has been a member of Local 2 since September 2000 and an employee of the New York Post since July 2000, working in the capacity as a Junior Pressmen.

2. Once Mr. Paulino became a Union member, he was eligible for placement on the Revision List, which is used to determine the order of when a person is eligible for promotion to Journeymen's status.

**SHAPIRO, BEILLY, ROSENBERG, ARONOWITZ, LEVY & FOX, LLP**

February 17, 2006
Page 4

_____

3. Mr. Paulino reviewed the Revision List in February 2004 and believed that he had been improperly placed on the Revision List behind other members who should have actually been behind him.[1]

4. Mr. Paulino brought the alleged inaccuracy to the attention of Daniel MacPhee, who was the Union representative in charge of the Revision List.[2] Mr. MacPhee refused to make a change in the list because he believed that the placement was accurate.

5. Mr. Paulino then brought the alleged inaccuracy to the attention of William Loftus (then the President of the Union) who refused to take any action to effect a change in the list.[3]

_____

[1] In this version of the Complaint, Plaintiff does not identify who those people allegedly were, but rather, merely characterizes them as "other similarly situated" minority employees. See Complaint at ¶ 31. In the proposed second amended complaint filed in Paulino I, and Mr. Paulino's August 26, 2005 affidavit he identified those persons as 2 caucasian employees, i.e. Gary Leonessa ("Leonessa") and Carol Marglin Coleman ("Marglin"). See Proposed Second Amended Complaint at ¶¶s 35-36; see also Paulino Affidavit at ¶ 7.

[2] In this Complaint, Paulino alleges that he notified MacPhee that there were Caucasians that had been placed ahead of him on the priority list, and that MacPhee agreed that his placement on the list was improper. See Complaint at ¶34. Mr. Paulino's August 25, 2005 affidavit contradicts that allegation because it states that MacPhee refused to review the records or to even consider his request and makes no reference in the discussion asserted in this Complaint. See Paulino Affidavit at ¶¶s 8-9.

[3] This Complaint alleges that Paulino complained to Loftus that the Union had engaged in discriminatory practices by placing caucasians ahead of minorities on the Revision List. See Complaint at ¶ 36. That allegation is flatly contradicted by Mr. Paulino's own affidavit, which states that he sent 2 letters to William Loftus in July and August of 2004 regarding his concerns with the Revision List. Neither the affidavit nor the letters reference or suggest a discriminatory practice on the basis of race or ethnicity by the Union. See Paulino Affidavit at ¶¶s 10-11 and Exhibits B and C (letters to Loftus). In addition, in the original complaint filed in Paulino I on May 11, 2005 and the amended complaint filed in Paulino I on July 6, 2005, Mr. Paulino never alleged that he complained to the Union that he was being discriminated against based upon his race or ethnic origin. The only thing that he stated was that he believed that his date was

SHAPIRO, BEILLY, ROSENBERG, ARONOWITZ, LEVY & FOX, LLP

February 17, 2006
Page 5

_____

6.	Mr. Paulino believed that he was suspended from the Union by the Executive Board in November of 2004 based upon his refusal to sign a form to enroll in the Section 125 Plan.[4]

7.	Mr. Paulino's health benefits were terminated by the Fund because he did not sign the enrollment form and did not make the required contributions, which were a condition of eligibility for benefits.

In this Complaint, Paulino has asserted claims against the Union alleging:

A.	Race and ethnic origin discrimination, as well as retaliation in violation of Title VII. See Complaint at ¶¶s 68-71 (First Cause of Action).

B.	Race and ethnic origin discrimination, as well as retaliation in violation of 42 U.S.C. §1981. See Complaint at ¶¶s 72-75 (Second Cause of Action).

C.	Failure to afford due process in violation of LMRDA §101(a)(5). See Complaint ¶¶s 76-80 (Third Cause of Action).

### III.
### SUMMARY JUDGMENT/DISMISSAL SHOULD BE GRANTED

The following discussion represents an outline of why dismissal/summary judgment in favor of Local 2 is warranted on the basis of this Complaint and the evidentiary record in this case.

_____

incorrect. See May 11, 2005 Complaint at ¶¶ s 26-28 and July 6, 2005 Amended Complaint at ¶¶s 26-28.

[4]	Mr. Paulino does not allege in this Complaint nor in his August 26, 2005 affidavit that his membership was suspended based upon his complaining of race and/or ethnic origin discrimination regarding the Revision List. Rather, what he has stated is that he was suspended because he refused to sign the Section 125 enrollment form. See Complaint at ¶ 55; see also Paulino Affidavit at ¶ 20.

February 17, 2006
Page 6

_____

**A.      The Title VII and §1981 Claims**

Mr. Paulino's claims of race and ethnic origin discrimination in connection with the Revision List, whether based upon an alleged violation of Title VII or 42 U.S.C. §1981, are unsupported by any evidence.

Claims of employment discrimination under either statute are analyzed under the burden- shifting framework defined in McDonnell-Douglas Corp. v. Green, 411 U.S. 792, 93, S.Ct. 1817 (1973), and Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). The burden initially falls upon the plaintiff to establish a prima facie case of racial discrimination in the terms and conditions of employment. To do so, plaintiff must show that: (1) he belongs to a protected class; (2) he was performing his duties satisfactorily; (3) he was subject to an adverse employment action; and (4) that the action occurred in circumstances giving rise to an inference of discrimination based on plaintiff's membership in that class. See McLee v. Chrysler Corp., 109 F.3d 130, 134 (2d Cir.1997).

In this case, Plaintiff cannot establish that either (a) there was any form of an adverse employment action as a result of his placement on the Revision List, or (b) that the Union discriminated against him in any manner in regard to his placement on the Revision List.

There is no evidence to support the Plaintiff's contention that Mr. Paulino's date on the Revision List (i.e. his advancement date) is not correct or that the 2 individuals that are claimed to have been wrongfully placed in front of him on the Revision List (i.e. Mr. Leonessa or Ms. Marglin) have been placed there by the Union because they are caucasian.  In fact, demonstrably absent from the August 26. 2005 affidavit that Mr. Paulino submitted in Paulino I are any facts establishing why his placement on the Revision List should be in front of Mr. Leonessa or Ms. Marglin.

What the evidence actually demonstrates in this case is that Mr. Leonessa and Ms. Marglin are in front of Mr. Paulino on the Revision List because they are entitled to be there based upon the number of shifts that they worked at the New York Post prior to and during the time period when they earned their Union cards.  As set forth in ¶¶s 4-7 of Mr. Heffernan's February 16, 2006 Supplemental Declaration, the mathematical application of the Union's longstanding formula to the shifts worked by Mr. Paulino, Mr. Leonessa and Ms. Coleman in 1999 and 2000 (as documented by the NY Post work records themselves) demonstrate that the order of placement on the Revision List is correct.  For example:

February 17, 2006
Page 7

_____

**Carol Marglin Coleman**

- Qualified for her Union card effective 7-1-00 by working at least 110 shifts between 1-1-00 and 6-31-00
- Between 7-1-99 and 12-31-99, she worked 71 shifts and between 1-1-99 and 6-30-99, she worked 28 shifts **(total shifts: 99)**
- Based upon the formula, her Revision List Date is **June 1, 1999**

**Gary Leonessa**

- Qualified for his Union card effective 12-31-00 by working at least 110 shifts between 7-1-00 and 12-31-00 and a total of 209 shifts from 1-1-00 to 12-31-00.[5]
- Between 7-1-99 and 12-31-99, he worked 69 shifts and between 1-1-99 and 6-30-99, he worked 26 shifts **(total shifts: 95)**
- Based upon the formula, his Revision List Date is **June 9, 1999**

**Daniel Paulino**

- Qualified for his Union card effective 7-1-00 by working at least 110 shifts between 1-1-00 and 6-31-00
- Between 7-1-99 and 12-31-99, he worked 66 shifts and between 1-1-99 and 6-30-99, he worked 0 shifts **(total shifts: 66)**
- Based upon the formula, his Revision List Date is **August 9, 1999**

In short, the evidence conclusively establishes that the Union did not discriminate against Mr. Paulino in any regard by placing either Mr. Leonessa or Ms. Marglin ahead of him on the Revision List.


2.   There is no evidence to support the conclusion that Mr. Paulino has suffered any form of adverse employment action based upon his placement on the Revision List for several reasons.[6]

_____

[5]   Because Mr. Leonessa worked more than 168 shifts in 2000, the rules required the Union to go back to the prior year to establish the date on the Revision List.  That is how Leonessa (who did not acquire his Union card until after Paulino) was assigned a date in 1999.

**SHAPIRO, BEILLY, ROSENBERG, ARONOWITZ, LEVY & FOX, LLP**

February 17, 2006
Page 8

_____

First, because the evidence demonstrates that Mr. Paulino's placement and order on the Revision list is correct, he cannot claim that he has been wrongfully denied any rights or benefits of employment because of that placement.

Second, it is undisputed in this case that Mr. Paulino has suffered no loss of wages, no loss of benefits and no loss of any terms and conditions of employment either within or outside the New York Post as a result of his position on the Revision List.[7] See Heffernan Dec. at ¶15; see also Vincent Dec. at ¶5.  In fact, Mr. Paulino's August 26, 2005 affidavit does not dispute this conclusion in any way.

Third, Plaintiff's claim is hypothetical in that it is based upon a possible layoff that might occur at some future time. See Paulino Aff. at ¶ 10 ("In the event of job cutbacks, official journeymen have priority over apprentices")  Not only is the claim a matter of pure speculation, but also wrong as a matter of fact.  As discussed within ¶11 of the September 21, 2005 declaration of Michael Tortora, Mr. Paulino:

(a) has a 5 day per week job guarantee that entitles him to work preference over legitimate journeymen in the industry regardless of the number of years in the business that the individual has,

(b) is a "permit" journeymen within the New York Post which gives him priority in work placement on a daily or nightly basis over more than 64 other regular situation holders within the New York Post, and

(c) the number of contractually required journeymen's positions under the CBA (through 2015) is almost double the number of regular and permit journeymen presently employed in the Post, thus making a cut-back or

---

[6] The Court is respectfully referred to pages 6-8 of the Union's August 1, 2005 Memorandum of Law and pages 6-8 of the Union's September 23, 2005 Memorandum of Law which collectively set forth the legal precedent in this Circuit supporting the dismissal of the Plaintiff's Title VII and §1981 claims based upon the absence of evidence supporting an adverse employment action.

[7] This is simply reinforced by the fact that the Complaint in this case pleads no facts demonstrating any actual adverse employment action that Mr. Paulino suffered as a result of his placement on the Revision List.  See e.g. Complaint at ¶¶s 70 and 74 (boilerplate allegations lacking any factual support)

elimination of Mr. Paulino's work entitlement virtually impossible for the next 10 years.

In short, the Plaintiff's discrimination claims are unsupported by any evidentiary basis, and should be dismissed as a matter of law.

**B.     The Retaliation Claims**

The retaliation claims under Title VII and §1981 that have been asserted by Plaintiff in this action are also legally and factually baseless and are subject to dismissal for numerous reasons.

First, the Title VII retaliation claim is subject to dismissal for the reasons set forth at pages 9-11 of the Union's September 23, 2005 Memorandum of Law. In summary, those reasons, are as follows:

   1.   Plaintiff never asserted a retaliation claim in the EEOC charge that he filed with the federal agency in February of 2005 and the conduct forming the basis for the charge occurred prior to the filing of the charge. See September 22, 2005 Declaration of Roger Carbo at ¶2 and Exhibit "A" (demonstrating that the charge was filed and docketed for notice by the EEOC on February 10, 2005)  Thus, the court lacks subject matter jurisdiction to hear the claim and should dismiss it.

   2.   The retaliation claim would also be time barred. Title VII requires that in order for a claim to be timely, the claim must be filed within 90 days of the claimant's receipt of a right-to-sue letter. The Notice of Dismissal and Right to Sue was issued by the EEOC on February 15, 2005. See Complaint at ¶7; see also Carbo Decl. at ¶ 3 and Exhibit "B" (Notice of Dismissal and Right to Sue). The Plaintiff's claim for retaliation was not asserted (at the earliest) until September 6, 2005 when the proposed second amended complaint was filed in Paulino I. This was more than 6 months after the Right to Sue letter was issued. Therefore, the claim is untimely and should be dismissed for this reason, as well.

   3.   The Title VII claim is unsupportable based upon the allegations in this Complaint and the evidentiary record in this matter. Local 2 was first notified of Mr. Paulino's EEOC charge sometime after February 10, 2005. See Carbo Decl. at ¶2 and Exhibit "A" (EEOC Charge and Notice from EEOC dated February 10, 2005). As a matter of law, there can be no casual connection between the EEOC charge and the

SHAPIRO, BEILLY, ROSENBERG, ARONOWITZ, LEVY & FOX, LLP

February 17, 2006
Page 10

---

claimed adverse employment action (i.e. his placement on the priority list) because the actions that are claimed to constitute the retaliatory conduct all pre-date the filing of the EEOC charge and the Union's actual awareness of the charge.

Second, the Plaintiff's retaliation claim under §1981 is equally without any evidentiary or legal support. In fact, the Complaint (on its face) conclusively establishes the absence of a viable claim.

1.  In order to establish a claim of retaliation cognizable under § 1981, plaintiff must show that he was (1) engaged in an activity protected under the anti-discrimination statutes, (2) the defendant was aware of plaintiff's participation in the protected activity, (3) the defendant took adverse action against plaintiff based upon this activity, and (4) a causal connection existed between plaintiff's protected activity and the adverse action taken by defendant. See Lizardo v. Denny's, Inc., 270 F.3d 94, 105 (2d Cir.2001). The Second Circuit specifically requires that the activity that is claimed to have been retaliatory be taken "in response to the claimant's assertion of rights that were protected by § 1981." Hawkins v. 1115 Legal Serv. Care, 163 F.3d 684, 693 (2d Cir.1998).

2.  What Mr. Paulino has alleged in this case is that he had expressed to the Union, from February 2004 to September 2004, his objection that caucasian members were being improperly placed ahead of himself and other minority members.[8] See Complaint at ¶¶s 31-38. However, the only adverse action that is alleged to have been taken by the Union against Paulino after he allegedly complained about the discrimination was that his membership was suspended. See Complaint at ¶ 39. That action, however cannot form the basis for a §1981 retaliation claim for 3 reasons:

   (a)   Paulino was never actually suspended from Union membership. See Tortora Decl. at ¶¶s 3-6.

---

[8]   As highlighted above, neither Mr. Paulino's own affidavit nor the letters that he sent to Loftus in July and August of 2004 reference or suggest that he was objecting to a discriminatory practice by the Union on the basis of race or ethnicity. See Paulino Affidavit at ¶¶s 10-11 and Exhibits B and C (letters to Loftus). Similarly, in the original complaint filed in Paulino I on May 11, 2005 and the amended complaint filed on July 6, 2005, Mr. Paulino never alleged that he complained to the Union that he was being discriminated against based upon his race or ethnic origin. The only thing that he stated was that he believed that his date was incorrect. See May 11, 2005 Complaint at ¶s 26-28 and July 6, 2005 Amended Complaint at ¶¶s 26-28.

February 17, 2006
Page 11

---

    (b)    Even if Paulino's membership was suspended (which it was not), he suffered no loss of employment, compensation or benefits as a result.

    (c)    There is no casual or temporal nexus between the alleged adverse employment action and the alleged protected activity. In fact, Mr. Paulino himself claims that the suspension of his membership was taken, not because of his objections to discriminatory practices, but rather solely because he refused to sign the Section 125 Plan enrollment form, an activity which is not protected under the statute. See Complaint at ¶ 55; see also Paulino Affidavit at ¶ 20. As a matter of law, the Plaintiff has simply not stated a claim. See e.g. Long v. Marubeni America Corp., 406 F.Supp.2d 285, 290 (S.D.N.Y. 2005)("A fortiori, retaliation for complaints of illegal conduct having nothing to do with employment discrimination does not violate § 1981."); see also Racker v. St. Bonaventure University, 2005 WL 1522797 at *7 (W.D.N.Y., June 28, 2005) (dismissing §1981 retaliation claim in the absence of facts demonstrating adverse employment action taken after the protected activity)

## C.     The LMRDA §101(a)(5) Claim

Although the Plaintiff has abandoned his free speech claim under LMRDA §101(a)(2), he still maintains that the Union violated LMRDA 101(a)(5) by suspending his membership in November 2004. As discussed at pages 12-13 and pages 21-22 of the Union's September 23, 2005 Memorandum of Law, that claim should also be dismissed for several reasons. For example:

1.    Mr. Paulino never exhausted the internal procedures established by the Union's Constitution and bylaws, which are a condition precedent to initiating litigation. See 29 U.S.C. § 411(a)(4).[9] As set forth in the February 16, 2006 Supplemental Declaration of John Heffernan:

---

[9]    The exhaustion requirements set forth in LMRDA §101(a)(4) also applies to claims alleging violations of LMRDA §101(a)(5). See Bernstein v. Nolan, 1990 WL 91728 at *14 (S.D.N.Y., June 28, 2000); see also Feltington v. Moving Picture Mach. Operators Union Local 306 of I.A.T.S.E., 605 F.2d 1251, 1255 (2d Cir. 1979)

**SHAPIRO, BEILLY, ROSENBERG, ARONOWITZ, LEVY & FOX, LLP**

February 17, 2006
Page 12

---

(a) Prior to the filing of the proposed second amended complaint, Mr. Paulino never raised any issue with the Union concerning his claim of membership suspension.[10]

(b) If Mr. Paulino believed that his membership had been suspended or that the Union's Executive Board had failed to afford him a full and fair hearing, he was required to appeal to the President for relief. If he was not satisfied, then he was required to appeal to the Executive Committee for relief. In the event that he was not satisfied, he was then required to appeal to the general body of the Local Union.

(c) Mr. Paulino never sought any form of relief from the Local Union or from the general body of the Local Union pursuant to the procedures required under the Constitution and Bylaws.

(d) At no time did Mr. Paulino ever raise with the International Union acclaim that he had been disciplined, or that he had been denied a full and fair hearing by the Union's Executive Board.

2. There was no actual suspension of Mr. Paulino's membership. The reference in the November 2004 Executive Board minutes was merely a reporting error that was made by Local 2's Recording-Secretary. As set forth in the September 22, 2005 Declaration of Michael Tortora, it is undisputed since November 2004, Mr. Paulino has suffered no interference, interruption nor any diminishment in his rights as a Local 2 member. See Tortora Decl. at ¶¶s 5-6. For example, since November 2004:

(a) Local 2 has treated Mr. Paulino as a member in good standing and accepted his dues,

(b) Mr. Paulino actively participated as a member in the New York Post Chapel meetings,

(c) Mr. Paulino was afforded the right to vote in the January 2005 elections for Chapel Chairman and Vice-Chairman at the New York Post,

---

[10] The Court should take note of the fact that in the original complaint filed in Paulino I on May 11, 2005 and the Amended Complaint filed in Paulino I filed on July 6, 2005, no claim was asserted by Mr. Paulino against Local 2 based upon the alleged membership suspension.

    (d)    Mr. Paulino was afforded the right to vote in the general elections for Union-wide office in May and June of 2005, and

    (e)    Mr. Paulino was afforded the right to attend and to participate at the Union's monthly general membership meetings.

It should be noted that prior to the dismissal of Action No. 1, Mr. Paulino never contested any of these facts.

## IV.
## CONCLUSION

The time has come for the Court to put an end to this baseless litigation.

The Union has been forced to waste enough of the member's dues revenue defending claims that have no factual or legal support.

For the reasons discussed in this letter memorandum as well as those memorandum of law that have been previously submitted by the Union, it is respectfully requested that this Court issue an order granting the Union summary judgment and directing that the Union be reimbursed for the counsel fees expended in this matter pursuant to 28 U.S.C. §1927.

    Respectfully submitted,

    *Barry I. Levy*

    BARRY I. LEVY

Cc:    Neil Frank, Esq.
       Steven Gonzalez, Esq.
       John Heffernan – President Local 2