AGREEMENT
BY AND BETWEEN
N. Y. P. HOLDINGS, INC.

AND

THE NEW YORK NEWSPAPER PRINTING
PRESSMEN'S UNION NUMBER TWO

THIS AGREEMENT is made and entered into this 1st day of October, 1993 by and between N. Y. P. Holdings, Inc. (the "Publisher") and The New York Newspaper Printing Pressmen's Union Number Two (the "Union") and has been extended and amended this 24 day of August, 2000.

PARTIES

1.   WHEN AGREEMENT EFFECTIVE

SECTION 1.  This Amended Agreement shall become effective upon the first full week following its ratification and shall continue in full force and effect until October 31, 2015, inclusive.  On November 1, 2015, it shall automatically renew for successive periods of twelve months unless, at least ninety (90) days prior to the end of any twelve-month effective period, either party shall serve notice upon the other that it desires cancellation, revision or modification of any provision or provisions of this Agreement. If either party serves such notice, the parties shall attempt to reach an agreement with respect to the proposed change or changes. At least sixty (60) days prior to the expiration date of the Agreement the parties shall meet to consider such changes. If agreement has not been reached on a new contract by the date on which this contract expires, the provisions of this contract will remain in full force and effect until an Agreement is reached or until either party gives the other party written notice terminating the Agreement.

2. PURPOSE

SECTION 2. The purpose of this Agreement is to establish a basis of employment and an understanding of mutual helpfulness between the parties hereto in the promotion of the newspaper industry of New York City toward the end of maintaining harmonious relations, maximum production, superlative quality, and the elimination of waste. It is agreed that this Agreement contains the complete understanding of the Publisher and the Union. It is also agreed that all the contractual rights of the parties are as specifically stated in the Agreement, which supersedes all prior agreements between the Publisher (or any of its predecessors, including the Publishers' Association of New York City, or New York Post Co., Inc.) and the Union, including any letters of interpretation, verbal understandings, past practices and/or arbitration awards. Amendments to this Agreement shall be in writing and signed by both parties.

3. RECOGNITION

SECTION 3. The Publisher recognizes the Union as the exclusive bargaining representative with respect to rates of pay, wages, hours of employment or other conditions of employment for all persons employed in the pressroom of the Publisher, excluding all professional employees, guards, and supervisors as defined in the National Labor Relations Act as amended.

4. UNION SECURITY

SECTION 4. All employees who are members of the Union on the effective date of this Agreement are required to remain members of the Union. Employees not presently members of the Union who come within the coverage of this Agreement, must make application for membership in the Union, and become a member thirty (30) days following the beginning of such employment or the effective date of this Agreement, whichever is later.

5. UNION REFERRAL

SECTION 5. The Union agrees to furnish competent pressmen, apprentices and junior pressmen qualified to work on a straight-time basis in the numbers required by the Publisher and at such times as the Publisher requires, upon four hours' notice. In the event that the foregoing procedure fails to produce a force of pressroom employees sufficient to meet the Publisher's requirements, the Publisher will endeavor to obtain from the Union, sufficient Union members to work on a straight time basis. In any event, the work required to produce the several editions shall proceed without interruption. Such workmen so engaged by the Publisher shall receive the rate of wages herein provided for the work done.

6. JURISDICTION

SECTION 6. The Union shall have exclusive jurisdiction over and an exclusive right to perform all work relating to the operation of the presses. The Publisher may assign new or additional work to the unit.

If in the future the Publisher installs offset printing presses, flexo presses or any other presses to produce all or part of the newspaper, the Union shall have exclusive jurisdiction over and an exclusive right to perform all work relating to the operation of such presses.

In addition to operation of presses, the jurisdiction of the Union shall include the cleaning, maintenance and the adjustments necessary for completion of the printed newspaper.

The Publisher agrees to give the Union ninety (90) days notice prior to the installation of new presses or processes.

7. UNION GUARANTEE

SECTION 7. The Union guarantees that it will require its members to exercise maximum care in the operation and maintenance of all the machinery and material handled by

them and the Union also guarantees at all times a full and satisfactory production from such machinery and material.

### 8. PLANT RELOCATION

SECTION 8. Should the Publisher remove his production plant or any part thereof to another location which produces newspapers for distribution primarily in the New York metropolitan area, the Publisher shall recognize the Union as the bargaining representative for pressroom employees and shall give at least three months notice prior to such relocation. The Publisher and the Union agree that this Agreement shall have full force and effect at any new, refurbished or rebuilt plants which produce newspapers for distribution primarily in the New York Metropolitan area. The metropolitan area, as defined by the Metropolitan Regional Council, consists of the five boroughs of New York City, the counties of Nassau, Suffolk, Westchester, Putnam, Dutchess, Rockland and Orange in New York State, the counties of Bergen, Essex, Hudson, Middlesex, Monmouth, Morris, Passaic, Somerset and Union in New Jersey, and Fairfield County in Connecticut.

### 9. CHAPEL REPRESENTATIVES

SECTION 9. The Union may have a chapel chairman who shall be considered as part of the production manning, but will be excused from working on the presses if, in his sole discretion, he deems it necessary to perform his duties as Chapel Chairman, and only he or his designated representative may in his absence report to the Union any alleged violations of this contract that cannot be settled satisfactorily with the Publisher through the foremen. No chapel meeting shall be held during working hours without first obtaining permission of the designated representative of the Publisher which shall not be unreasonably withheld.

Representatives of the Union, may visit the plant for any legitimate purpose relating to their duties as Union representatives. When visiting the plant, such representatives will not interfere with the progress of the work.

### 10. FOREMEN

SECTION 10. The Publisher shall designate a foreman who shall be the Publisher's unrestricted representative with the authority to direct the pressroom work force. No one, except a foreman, is authorized to issue orders or change working conditions in the pressroom. Foremen shall have sole authority to employ employees and may discharge employees (1) for incompetence, (2) for neglect of duty, (3) for insubordination, (4) for violation of office rules which have been conspicuously posted, or for violation of the terms of this Agreement, or (5) when it becomes necessary to decrease the working force. The justification for such discharge is an arbitrable issue except for (5) above. When discharged an employee may request the reason for his discharge and an answer shall immediately be given by the foremen.

Foremen may assist in the performance of bargaining unit work, provided they do not displace bargaining unit employees in the performance of bargaining unit work.

The right of the Publisher, through the foremen, to designate and direct the work of employees on presses or in the pressroom on all editions and at all times, is acknowledged by the Union. The foremen shall be the sole judge of an employee's competency and general fitness for work and pressroom employees shall work under the foremen's direction at all times at the wages specified in this Agreement.

All time covered by this Agreement belongs to the Publisher, and employees shall temporarily or regularly perform such duties pertaining to press work as may be assigned to them by the foremen. While working at 205 South Street, a uniform starting time for employees on all shifts shall be maintained. At the Bronx production facility and/or any subsequent facility, all