Barry I. Levy (BL 2190)
Max Gershenoff
Rivkin Radler LLP
926 RexCorp Plaza
Uniondale, New York  11556
(516) 357-3000

*Counsel for Defendant, NYP Holdings, Inc. s/h/a News Corp.*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
DANIEL PAULINO,

                            Plaintiff,                        Docket No.:
   -against-                                                  CV 07-8593 (GBD)

NEWS CORP also known as NYP HOLDINGS, INC.
doing business as THE NEW YORK POST,

                            Defendant.
-----------------------------------------------------------------X

## STATEMENT PURSUANT TO LOCAL CIVIL RULE 56.1

Defendant NYP Holdings, Inc. s/h/a News Corp. a/k/a NYP Holdings, Inc. d/b/a The New York Post ("NYP" or "Defendant"), by and through its counsel, Rivkin Radler LLP, respectfully submits, pursuant to Local Civil Rule 56.1, that the following facts are not in dispute:

**I.**    **Relevant Substantive Facts**

1.    At all relevant times, Daniel Paulino's ("Paulino" or "plaintiff") employer has been NYP. (See Exhibit "A" attached to Levy Declaration - Complaint in Paulino v. New York Pressmen's Union No. Two, Docket No.: CV 05-4647(GBD) ("Paulino I") at ¶¶ 13, 24; see also ).

2.    NYP is signatory to a collective bargaining agreement with the New York Newspaper Printing Pressmen's Union Local No. 2 ("Local 2" or the "Union"), which is effective until

October 31, 2005. (See Exhibit "T" attached to Levy Declaration – Collective Bargaining Agreement).

3.  News Corp., which is a separate entity, (i) has never been plaintiff's employer, (ii) is not a signatory to the Local 2 CBA, (iii) is not responsible for making contributions to the Publishers'-Pressmen's Welfare Fund, and (iv) is not the sponsor or administrator of the New York Post Cafeteria Plan for Local 2 Represented Employees. (the "Cafeteria Plan") (See Exhibit "R" attached to the Levy Declaration – Cafeteria Plan; see also Exhibit "T")

4.  In July 2000, Paulino was hired by NYP as a Junior Pressman. (See Exhibit "A" at ¶¶ 18-19).

5.  In September 2000, Paulino became a member of Local 2, which represents NYP employees that work in the pressroom at NYP's Bronx printing facility. (See Exhibit "A" at ¶¶ 13, 24).

6.  As a Local 2 member, plaintiff was eligible to receive medical benefits provided by the Publishers'-Pressmen's Welfare Fund (the "Fund"). The Fund is a multi-employer jointly administered welfare fund established pursuant to a declaration of trust and maintained pursuant to various collective bargaining agreements between the Union and three separate employers, including NYP. The benefits that plaintiff was eligible to receive are funded by two separate sources. The first source of funding is contributions made by NYP and other employers to the Fund. The second source of funding is contributions from Local 2 members who elect to receive benefits. These employee contributions have existed in one form or another for more than 20 years. (See Exhibit "B" attached to Levy Declaration. - Declaration of Robert Costello at ¶¶ 3-4)

7.      In March 2004, employee contributions to the Fund were increased due to rising healthcare costs. To help alleviate the economic impact of the increased contributions to NYP employees such as plaintiff, Local 2 negotiated an agreement with NYP establishing a Cafeteria Plan pursuant to IRS Section 125 (the "Cafeteria Plan" or "Plan") to enable participating members to make the contributions to the Fund on a pre-tax basis. (See Exhibit "B" at ¶¶ 2, 5, 6)

8.      In July 2004, the Local 2 members were informed that contributions to the Fund could be made directly by individual members on an after-tax basis, or withheld on a pre-tax basis through participation in the Cafeteria Plan. Furthermore, recipients of benefits, including plaintiff, were advised in July 2004 that failure to make contributions using either method would result in termination of benefits. (See Exhibit "B" at ¶ 8)

9.      Plaintiff refused to execute an authorization to participate in the Cafeteria Plan. As a result, NYP could not lawfully deduct pre-tax contributions from his weekly paychecks in order to remit them to the Fund. Plaintiff also failed to make any post-tax contributions to the Fund. In fact, plaintiff never made a single contribution to the Fund during the entire period in which he received benefits. As a result, the Fund determined that Mr. Paulino no longer was eligible for coverage and his benefits were terminated. Even though a notice of continuation coverage was not required (i.e. a COBRA Notice), the Fund mailed one to Mr. Paulino on February 7, 2005. (See Exhibit "B" attached to Levy Declaration. - Declaration of Robert Costello at ¶ 8, 9)

10.     Once his coverage for health benefits was interrupted, plaintiff neither pursued nor exhausted his administrative remedies prior to initiation of any lawsuits, as required by the terms of his benefits plan. (See Exhibit "B" at ¶ 9)

11.     The Pressmen's-Publishers' Benefits Fund Summary Plan Description (the "Plan") states as follows:

> **Limitation on When a Lawsuit May Be Started**
>
> You may not start a lawsuit to obtain benefits until after you have requested a review and a final decision has been reached on review, or until 90 days have elapsed since you filed a request for review if you have not received a final decision or notice that an additional 60 days will be necessary to reach a final decision. No lawsuit may be started more than three years after the time proof of claim must be given.

(See Exhibit "C" attached to Levy Declaration - Pressmen's-Publishers' Benefits Fund Summary Plan Description at p. 56)

12.     A similar series of administrative remedies are set forth in the Cafeteria Plan. A disputed claim must first be submitted to the Claims Administrator who is responsible for making a benefit determination. That decision is subject to an appeal which is then heard before a "Committee" of two or more persons, whose decision is final and binding. (See Exhibit "R" attached to the Levy Declaration – Cafeteria Plan Summary Plan Description at pages 5-6)

13.     Section 22 of the NYP-Local 2 CBA requires NYP to make employer contributions to the Fund on behalf of eligible employees. Since 2004, NYP has made all employer contributions to the Fund on behalf of Paulino. (See Exhibit "S" attached to the Levy Declaration – November 7, 2007 Declaration of Michael Racano at ¶ 4)

## II.    Relevant Procedural Facts

14.     On May 11, 2005, Plaintiff commenced his initial lawsuit against Local 2 and NYP entitled Daniel Paulino v. The New York Pressmen's Number Two and the New York Post, Docket No.: 05-4647(GBD)("Paulino I). Although ERISA claims were not contained in the

4

original complaint in Paulino I, plaintiff and his counsel presented a claim arising from the same nucleus of fact alleged in the present case, asserting that Paulno's rights under COBRA were violated as a result of the "unlawful termination of his medical benefits". (See Exhibit D at ¶¶ 64-66) (See Exhibit "D" attached to the Levy Declaration – Original Complaint in Paulino I ¶¶64-66)

15. On July 6, 2005, Plaintiff filed an amended complaint in which he acknowledged that he received – but refused to sign – the Cafeteria Plan enrollment form on two (2) separate occasions to authorize the deduction of pre-tax contributions from his pay for employee contributions to the Plan. (the "Amended Complaint," annexed as Exhibit E to the Levy Decl., at ¶¶ 30, 31, and 36). In the Amended Complaint, plaintiff directly challenged the termination of his medical benefits, alleging claims for violations of ERISA § 502(a)(1)(B) and § 510 based upon Local 2's alleged wrongful termination of his medical benefits (See Exhibit "E" attached to the Levy Declaration – Amended Complaint in Paulino I ¶¶30, 31, 36 and 68-73).

16. On August 1, 2005, Local 2 moved for summary judgment and to dismiss the Amended Complaint. (See Exhibit "F" attached to the Levy Declaration – First Motion to Dismiss in Paulino I).

17. NYP elected to answer rather than move in Paulino I. (See Exhibit "G" attached to the Levy Declaration – Docket Sheet in Paulino I – Entry No. 15)

18. Plaintiff's response to Local 2's motion was an August 29, 2005 memorandum that conceded the absence of any factual or legal support for the majority of the claims plaintiff asserted (including the ERISA claims), and withdrew (with prejudice) all of the claims against

Local 2 with the exception of the Title VII claims. (See Exhibit "H" attached to the Levy Declaration – Memorandum in Opposition)

19. At the same time, plaintiff filed a one-page motion seeking to add the Fund as a party. (See Exhibit "G" – Docket entry No. 20).

20. Six days later, on September 6, 2005, plaintiff filed a further motion seeking to amend/correct the Amended Complaint to assert claims against the Fund, and to "clarify" claims against NYP and Local 2. Attached to the motion was a Proposed Second Amended Complaint (See Exhibit "I" attached to the Levy Declaration – Proposed Second Amended Complaint).

21. The Proposed Second Amended Complaint abandoned the state law discrimination claims against NYP but continued to assert Title VII claims. In addition, the Proposed Second Amended Complaint <u>now</u> asserted claims under ERISA § 502(a)(3) against both NYP and the Fund (as "co-administrators") for breach of fiduciary duty in violation of ERISA § 509 and § 504 stemming from the Fund's decision to deny plaintiff coverage for benefits under plaintiff's benefits plan. The sections of ERISA upon which the proposed complaint were based are the very same sections that form the basis of the present action. (See Exhibit "I" at ¶¶ 83-91 and ¶¶ 92-105).

22. NYP was never required to respond to the Proposed Second Amended Complaint. In late September 2005 (less than one month after he filed the Proposed Second Amended Complaint) plaintiff sought an order from the Court for permission to withdraw all claims against NYP, a request granted by Order dated September 30, 2005. (See Exhibit "J" attached to the Levy Declaration – Order granting Plaintiff's motion to withdraw)

23. On October 4, 2005, counsel for plaintiff and NYP filed a jointly executed Order and Stipulation of Dismissal With Prejudice, which was signed by this Court on October 5, 2005. The Order and Stipulation provided for the dismissal of all claims that "were or could have been asserted against" NYP in the action (See Exhibit "K" attached to the Levy Declaration – Stipulation and Order of Dismissal)

24. Notwithstanding the dismissal of plaintiff's claims against NYP, the litigation continued. On December 14, 2005, the Court denied plaintiff's motion to file the Proposed Second Amended Complaint. However, the Court granted plaintiff leave to file a Proposed Third Amended Complaint (the fourth version of the pleading) by January 4, 2006, and granted Local 2 and the Fund the right to file any supplemental memorandum and/or declarations opposing the proposed pleading in advance of a conference that was then scheduled for March 1, 2006. (See Exhibit "L" attached to the Levy Declaration – December 14, 2005 Order)

25. Rather than follow the Court's direction, plaintiff's counsel filed an entirely new action on January 4, 2006. NYP was not named as a defendant in Paulino II because of the Order and Stipulation. However, the complaint in Paulino II: (i) named Local 2, as well as the Fund, its administrator and trustees as defendants, (ii) challenged the decision to terminate plaintiff's medical coverage under his benefits plan, and (iii) asserted claims for breach of fiduciary duty under ERISA §502(a)(3) and failure to provide information under §502(c)(1). (See Exhibit "A" at ¶¶ 2, 53, 54, 62, 64 and 67¶¶ 81-89).

26. On February 17, 2006, Local 2 and the Fund filed motions to dismiss and/or for summary judgment. (See Exhibit "M" and "N" attached to the Levy Declaration – motions filed by Local 2 and Fund Defendants).

27.     Plaintiff did not oppose the Fund's motion and the claims were dismissed with prejudice by the Court on April 5, 2006. (See Exhibit "O" attached to the Levy Declaration –Order)

28.     On May 7, 2007, the Court issued a memorandum opinion and order which terminated the litigation and dismissed all of the plaintiff's remaining claims against Local 2. Notably, the Court made specific findings of fact in its decision, concluding that the Fund was the party who terminated Paulino's medical benefits and that the termination was justified based upon plaintiff's refusal to enroll in the Cafeteria Plan or to make the contributions to the Fund himself on a post -tax basis. (See Exhibit "P" attached to the Levy Declaration – May 7, 2007 Memorandum Decision)

29.     Plaintiff filed the present complaint against NYP on October 3, 2007. Notwithstanding the fact that: (i) in Paulino I this Court signed the Stipulation and Order that dismissed with prejudice "all claims <u>that were or could have been asserted</u> against" NYP, and (ii) in Paulino II, plaintiff litigated to disposition a vast array of ERISA claims involving the termination of his medical coverage under his benefits plan, plaintiff now has asserted a series of ERISA claims against NYP in the present complaint that are predicated on the same facts, statutes and legal theories that already have been addressed in the prior litigation. (See Exhibit "Q" attached to the Levy Declaration – Complaint in present litigation)

Dated: Uniondale, New York
      November 8, 2007

Respectfully submitted,

RIVKIN RADLER LLP

By: ___/s/ *Barry I. Levy*___
      Barry I. Levy (BL 2190)
      A Member of the Firm
926 RexCorp Plaza
Uniondale, New York 11556
(516) 357-3000

*Counsel for Defendant, NYP Holdings, Inc. s/h/a News Corp.*

*Of Counsel:*

Max Gershenoff, Esq.

2087522 v2

9